**ARCHER et al.  v.  ROSS et al.**

No. 15403.

Court of Civil Appeals of Texas.

Fort Worth.

Oct. 2, 1953.

Rehearing Denied Nov. 6, 1953.

Fannin & Fannin, and Oliver W. Fannin, Fort Worth, for appellants.

Martin & Moore, Brewster, Pannell, Leeton & Dean, and Wm. C. Pannell, Fort Worth, for appellees.

RENFRO, Justice.

On February 23, 1951, Ross and Sensibaugh agreed to sell to J. E. McLelland a large number of cattle to be delivered at a later date. McLelland paid $40,000 cash as a partial payment and agreed to pay the balance upon delivery of the cattle. Subsequent to the above date, McLelland showed Fred Archer some cows and calves, known for descriptive purposes as the Kenneth Cook cows. Archer agreed to buy 250 cows with calves and paid McLelland a $10,000 down payment. It was represented by Sensibaugh to McLelland and by McLelland to Archer that the majority of the Kenneth Cook cattle were four years of age, that there were a few old cows and the balance were of good ages. On June 1st Archer had trucks ready on the Ross ranch, where the cattle were located, to accept delivery. At that time he had at first refused to accept the cattle, saying they were not the same as represented to him by McLelland. Archer asked McLelland for the return of the $10,000 he had paid McLelland but McLelland answered that he did not have the $10,000. Archer then was of the opinion that Ross and Sensibaugh had the $10,000 but prior to the filing of the hereinafter mentioned law suit he learned that Ross and Sensibaugh had not received any part of same. His purpose in accepting the cattle and stopping payment on the draft was to get back the $10,000. After some discussion, participated in by McLelland, Archer, Sensibaugh and Ross, Archer accepted the cattle and drew a draft for $30,-950, the balance of the agreed contract price, to McLelland, who in turn endorsed same and delivered it to Ross and Sensibaugh. Only 126 cows and calves were delivered; that number, however, was satisfactory to all concerned. The cattle were moved to Tarrant and Bosque Counties. Archer stopped payment on the draft. Ross and Sensibaugh tried without avail to get Archer to pay the draft.

On June 22, 1951, Ross and Sensibaugh sued McLelland, Archer and the A–Bar Cattle Company, Inc., in a district court in Tarrant County, setting out their contract with McLelland, see Ross & Sensibaugh v. McLelland, Tex.Civ.App., 262 S.W.2d 205, and alleging Archer was acting for himself and for the A–Bar Cattle Company, Inc., as a stockholder, director and its duly authorized agent, that defendants

McLelland and Archer represented to the plaintiffs that the cattle to be delivered by plaintiffs to McLelland were in turn to be at the same time and place delivered by McLelland to Archer and A–Bar Cattle Company and would be paid for by a draft drawn by Archer against the A–Bar Cattle Company, made payable to McLelland and that McLelland would in turn endorse said draft and deliver same to the plaintiffs as part payment of the cattle and in accordance with said representations made by the defendants that the transaction was carried out as above and that McLelland caused his endorsement on the draft to be canceled and Archer and the A–Bar Cattle Company caused payment of the draft to be stopped when presented to the bank, and alleged that the defendants induced the plaintiffs to deliver said cattle to them in acting together in a common design to defraud the plaintiffs out of their cattle and the value thereof, knowing at the time that the draft was drawn and delivered to plaintiffs that payment of the draft would be stopped. They then set out the removal of the cattle to Tarrant and Bosque Counties; that the defendants represented to the plaintiffs said draft would be honored when presented to plaintiffs and plaintiffs believed and relied upon such representation and were thereby induced by the defendants to deliver the cattle to the defendants; that the representations were false and fraudulent and known to each of the defendants to be such and were made in order to induce the plaintiffs to deliver the cattle to them. Plaintiffs asked that the purchase of the cattle be set aside and the cattle restored to the plaintiffs' possession. They prayed for appointment of a receiver to take possession of said cattle and preserve same during the pendency of the suit.

The court, on June 29, 1951, appointed a receiver to take possession of said cows. On September 7, 1951, the court entered an agreed order authorizing the receiver to sell the cattle, the order containing a provision that "the agreement of the parties to the sale of said cattle shall not in any way effect or prejudice the rights of any of the parties hereto, and that their rights in

and to said cash money shall be the same as their rights were in and to the said cattle before they were sold."

On January 19, 1952, the court entered an order approving the final report of the receiver and directing that the proceeds of the cattle be delivered to the district clerk of Tarrant County, Texas.

No appeal was taken from the order appointing the receiver and, as heretofore set out, all parties agreed to a sale of the cattle by the receiver and no objection was made to the receiver's final report and no exception taken to the order of the court approving the report and ordering the money paid into the registry of the court.

On the 17th of March, 1952, the plaintiffs filed their first amended original petition. The amended petition appears to embrace all the allegations of the original petition down to the application for a receiver. At this point in the amended petition the plaintiffs set out that a receiver had been appointed, that the receiver had sold the cattle and paid the money into the registry of the court less the sum of the expenses of the receivership. The amended petition then goes further into the alleged fraudulent conduct of the defendants, particularly of the defendants Archer and A–Bar Cattle Company, and prays for judgment against all defendants for $30,950, being the amount of the draft in question, or, in the alternative, for judgment for the reasonable cash market value of the cattle, or, further in the alternative, for judgment against the defendants for the contract price of said cattle and exemplary damages against Archer and the A–Bar Cattle Company, and prayed that the clerk of the court be ordered to pay the plaintiffs the balance of the purchase price of said cattle theretofore received by her from the receiver, same to be credited on their judgment.

The case was tried before a jury. Material to this appeal the jury found that Archer acted with malice toward Ross and Sensibaugh in stopping payment on the draft, and awarded $100 exemplary damages; that Ross and Sensibaugh repre-

sented to McLelland the Kenneth Cook cattle to consist of approximately 200 cows four years of age and the balance of approximately 150 of good ages, with a sprinkle of old cows; that such statements were made as statements of opinions and McLelland knew such statements to be opinions; that McLelland made the same representations to Archer but that such statements were made as statements of opinions and Archer knew they were so made; and further that the cows and calves delivered to Archer did conform to the cows and calves previously shown him by McLelland; that prior to June 1, 1951, Ross and Sensibaugh agreed with McLelland that if McLelland would permit them to accept checks and drafts direct from purchasers Ross and Sensibaugh would arrange to clear such checks and drafts and accept the same relying solely on the credit of such purchasers and in full payment of McLelland's obligation to them; and that the Archer draft was accepted in accordance with said agreement. That on June 1, 1951, Archer made the statement he would take the cattle and give the draft in question in payment of the balance due therefor for the purpose of inducing Ross and Sensibaugh and McLelland to part with their respective interests in and to their possession of said cattle. That Ross and Sensibaugh believed Archer was accepting the 126 pairs of cows and calves in good faith and believed that he gave the draft in question with intention that it would be paid when presented. That Ross and Sensibaugh parted with their possession of the cows and calves in reliance upon their belief that Archer was accepting the cattle in good faith and giving the draft in question with intention that it would be paid in due course.

Other issues exonerated McLelland from liability both as to plaintiffs' suit against him and Archer's cross action against McLelland.

The court rendered judgment in favor of McLelland and no one questions said judgment as to him. The judgment in so far as it concerns McLelland is therefore affirmed.

The court entered judgment for plaintiffs against Archer and A–Bar Cattle Company for the sum of $31,050, providing interest on $30,950, the amount of the draft, from June 1, 1951 until paid, that McLelland be given credit for $269 on said amount, and further reciting that after the expenses of the receivership and fee of the receiver were paid the sum of $31,651.03 remained on deposit in the clerk's office and the clerk was directed to pay said sum to the plaintiffs to be applied on their judgment.

The appellants Archer and A–Bar Cattle Company in this appeal attack that part of the trial court's judgment taxing the costs of receivership against them, the allowance of interest on the $30,950 draft from June 1, 1951, and the failure of the court to allow them an offset on the judgment.

The appellants take the position the court appointed a receiver on June 29, 1951, solely upon the statutory ground that the suit of plaintiffs was to vacate an alleged fraudulent purchase of cattle and that by their amended petition plaintiffs abandoned their cause of action to vacate an alleged fraudulent purchase of the cattle and for the first time sought judgment against appellants on the draft in question. They say further that in view of the jury's finding that plaintiffs had agreed with McLelland to release him if he would permit them to accept checks and drafts direct from purchasers, that plaintiffs had no right to rescind the contract they had with McLelland and recover the cattle on the alleged ground of fraudulent purchase of the cattle by Archer, and that therefore the appointment of a receiver was improper in the first place and the costs should have been taxed against the plaintiffs.

■ The order appointing the receiver has long since become final and the appellants could not, even if they desired, at this late date attack the receivership proceeding. Rule 385, Texas Rules of Civil Procedure; Stubbs v. Thomason, Tex.Civ.App., 244 S.W.2d 844; Leach v. Leach, Tex.Civ.App., 223 S.W. 287; Huth v. Huth, Tex.Civ.App., 110 S.W.2d 1011;

Saunders v. Kempner, Tex.Civ.App., 32 S.W. 585.

■ Appellants did not file a motion to re-tax or readjudicate costs of receivership but in their amended motion for new trial list as one of their grounds for a new trial the alleged error of the court in taxing the receivership costs against the appellants. The petition states grounds and reasons why the court should make the appointment, and the reasons are embraced in the statute upon which a court may act in appointing receivers, and since the order appointing the receiver was not appealed from, this court must indulge the presumption that the receivership was proper. Lines v. Robinson, Tex.Civ.App., 91 S.W. 2d 1108; Holland v. Preston, Tex.Civ.App., 41 S.W. 374.

■ Ordinarily whether a receiver will be appointed and the matter of his compensation are matters within the sound discretion of the trial court and his action will not be reversed unless there has been an abuse of discretion. Taylor v. Taylor, Tex. Civ.App., 91 S.W.2d 394; Hines v. Meador, Tex.Civ.App., 193 S.W. 1111. It was held in Rex Refining Co., Inc., v. Morris, Tex.Civ.App., 75 S.W.2d 156, 157, that "the rule is fairly well established that a trial court is allowed some discretion in the matter of taxing such costs of a receivership, and that conditions may exist in which such costs may be taxed against the property in the hands of the receiver, rather than against the unsuccessful plaintiffs in the suit", and that the costs of operating a receivership are taxable as court costs whether it be held that the receiver was providently or improvidently appointed.

The successful party to a suit is entitled to recover of his adversary all costs incurred therein except where otherwise provided. Rule 131, T.R.C.P.; Copeland v. Bennett, Tex.Civ.App., 243 S.W.2d 264.

■ The way fees of receiverships are to be taxed as costs is lodged within the discretion of the trial court. Payne v. Little Motor Kar Co., Tex.Civ.App., 266 S.W. 597.

■ The general rule is that expenses of receivership should come from the party whose wrongful act made the appointment of a receiver necessary in order to preserve the property during the litigation. Houston Production Co. v. Taylor, Tex. Civ.App., 33 S.W.2d 202.

■ In view of the jury's findings, which are not attacked by appellants, we find nothing in this case to take it out of the general rule above announced. It was, according to the jury, the defendants' wrongful conduct that made the receivership necessary in the first place. The receivership being in all things proper, as we must find in the absence of an appeal, we think the trial court did not abuse his discretion. After a careful consideration of the record, we have concluded that the trial court did not abuse his discretion in assessing all costs against the defendants, and did not abuse his discretion in overruling the motion for new trial, in which such failure to assess was made a ground.

■ Appellants concede that ordinarily an instrument payable on demand would bear interest from its date but assert that by reason of the improper appointment of a receiver the appellants were denied the use and possession of the cattle as well as use of the money after the cattle were disposed of by the receiver and therefore the plaintiffs should not be allowed any interest on the draft in the instant case. Having held that the appointment was proper, it follows that we overrule such a contention.

Appellants contend that the difference between the draft sued on and the amount of proceeds from the sale of the cattle amounted to $5,203.61 and that this amount should be offset against the judgment obtained by the plaintiffs.

■ In view of our holding that the court did not err in taxing the costs of receivership against the appellants, it follows that the court did not err in failing to offset the judgment. It appears from the record that it will take all the money

218

received for the cattle to satisfy plaintiffs' judgment and pay costs.

It is appellants' contention that exemplary damages were improperly assessed against the defendants for the reasons that Archer had no contract with the plaintiffs, that Archer's contract was with McLelland and that a breach of contract in which a tort was committed, if one was committed, was a breach of the contract Archer had with McLelland.

█ It is clear from the jury's findings and from undisputed evidence in the record that Archer delivered the draft knowing it would be endorsed and delivered to plaintiffs and that he had the intention at that time of stopping payment on same, and that plaintiffs would not have allowed the cattle to leave their premises except upon their reliance that said draft would be paid when duly presented and that Archer acted with malice toward plaintiffs. We overrule the point of error.

The judgment of the trial court is affirmed.