582

J. R. STRAYHORN et al., Appellants,

v.

Ruth Legett JONES et al., Appellees.

No. 6757.

Court of Civil Appeals of Texas.

Amarillo.

April 7, 1958.

Rehearing Denied May 5, 1958.

McMahon, Smart, Sprain & Wilson, Abilene, Adkins, Folley, McConnell & Hankins, Amarillo, for appellants.

Will Wilson, Atty. Gen., James H. Rogers, Milton Richardson, Assts. Atty. Gen., for appellant, State of Texas.

Wagstaff, Harwell, Alvis & Pope, J. H. Hand, Childers & Childers, Abilene, Shank, Dedman & Payne, Dallas, Stubbeman, McRae & Sealey, Midland, Harry G. Dippel, Fort Worth, Willard Wagner, Williams, Lee & Kennerly, Willard B. Wagner, Jr., Fountain, Cox & Gaines, Vinson, Elkins, Weems & Searls, Andrews, Kurth, Campbell & Bradley, Ben Rice III, Richard F. Burns, Houston, Watson & McGee, Roby, for appellees.

PITTS, Chief Justice.

This is an appeal from an order of a trial court taxing all fees and other expenses of a duly appointed receiver and his duly selected attorney against the losing parties in a strongly contested trespass to try title suit involving lands and mineral interests located in Kent County, Texas. The original suit out of which this and other matters arose was filed on October 24, 1951, and on May 3, 1952, the trial court, upon application of parties, each showing a probable interest in the lands involved, duly appointed a receiver by its order so entered, from which order an appeal was perfected to this Court. The merits of the issue of receivership were determined by this Court on October 13, 1952, as reported in 256 S.W.2d 1016, styled Jones v. Springer wherein this Court sustained the order of the trial court in appointing a receiver. Thereafter, while the property involved was being managed and controlled by the duly appointed receiver under the direction of the trial court, the case was tried October 23, 1953, on its merits before the trial court which appointed a receiver and a jury, which jury returned its verdict upon which the trial court rendered judgment for the

plaintiffs and certain named intervenors thereto, all of whom are appellees herein, from which judgment the losing parties to the suit tried on its merits, who are appellants herein, perfected an appeal to this Court. The trial court's judgment on the merits of the case was affirmed by this Court on March 5, 1956, as reported in 289 S.W.2d 321, styled Strayhorn v. Jones, after which a writ of error was granted and our judgment in the cause was affirmed on March 13, 1957, by the Supreme Court of Texas as reported in 300 S.W. 2d 623. For the many names of the interested parties, their respective interests claimed, the nature of the original suit, the grounds for the appointment of the receiver and any other pertinent matters of interest here, we refer to the three previously mentioned opinions heretofore cited involving the same parties.

Upon a satisfactory showing made to the trial court, sitting as a court of equity, by the applicants for a receivership, some of whom are appellants herein, it found in effect that there existed a valid controversy and that applicants each had a probable interest in the lands involved, which interests were in danger of being lost, destroyed or materially damaged unless a receiver be appointed, for which reasons Tom Davis was appointed receiver upon the execution of a proper bond and he was directed to take exclusive possession of the properties involved and to take the necessary action for developing oil, gas and other minerals therefrom and to save, care for and preserve the oil and gas produced and the proceeds from the sale of such minerals produced therefrom until the rightful owners of the property be determined by a final judgment and to return the properties or proceeds therefrom to the true owners thereof when such had been determined. It was further ordered by the trial court, however, that no contracts for drilling of wells upon the said lands or the sale of proceeds therefrom be made by the receiver without first having made application to and receiving authority and direction from the trial court after a notice in writing had been given all parties of record through their attorneys respectively of record and a hearing had before the court. Such appointment was approved by this Court as a result of which a final judgment was entered on appeal. The record reveals that such orders so given the receiver by the trial court were complied with by him and no acts of his concerning such matters have been challenged.

Therefore the appointment of the receiver here involved was legally made upon a showing of good cause therefor and such appointment was not improvidently, improperly, inequitably or wrongfully made. Consequently the rules often applied to the appointment of a receiver improvidently or wrongfully do not apply to the facts found in this case.

The record before us reveals that while the receiver proceeded to prepare for drilling wells and to otherwise comply with the trial court's orders, among other acts performed, he, with the approval of the trial court, entered into a written production contract with all other interested parties in the property involved of date March 31, 1953, whereby the said interested parties being all parties in this action signed the contract agreeing to its terms to the effect in part that because of the pending litigation involving title and possession of the property in question when much of the acreage in what was known as "Salt Creek Field," of which the land here involved is a part, and the proceeds therefrom had been unitized and was then being operated with production and because the trial court had seen fit to appoint Tom Davis receiver during the pendency of the litigation, certain suits then pending involving the subject matter would be dismissed and the receiver was precluded from drilling any wells himself, but all proceeds from developments under the terms of the contract would be paid over to the receiver, with a further provision in effect that he should pay a proportionate

part of the cost of development from the said proceeds and in paragraph 5 of the contract there is a provision that the receiver should upon being discharged pay over and distribute to the persons entitled thereto all remaining money and property coming into his possession as receiver "less the reasonable expenses of receivership allowed by the court, and the operating and development costs herein mentioned," which provision was complied with. The said contract further provided in part that "This agreement shall be binding upon and shall inure to the benefit of the parties hereto, their heirs, successors, assigns and legal representatives."

The record reveals that the receiver proceeded under the terms of his appointment and the said contract with the approval of the trial court and after paying a proportionate part of the costs of development as provided for by the contract, he received earnings in the total sum of $749,410 in cash from the proceeds, out of which sum the necessary receiver's fees and other expenses for operating and development costs were paid. The record reveals that Tom Davis, receiver, after final judgment was rendered in the primary case on its merits and on May 2, 1957, filed his final report accordingly as receiver and the same was in all things approved by the trial court on May 16, 1957, wherein the fees received by the receiver and his attorney were approved as were all other necessary expenses incurred by the receiver, who was directed to properly disburse the proceeds to the rightful owners thereof, after which he and his bondsmen were fully released and discharged from further liability by the trial court on June 18, 1957. The receiver's final report thus approved by the trial court revealed that he had received as earnings from the property over and above the proportionate operating expenses the total sum of $749,410 and after having paid all necessary expenses of the receiver's operation therefrom, including fees in the sum of $16,500 for the receiver and $15,500 for the attorney, as well as $6,375 for receiver's bond premium along with other expenses, there was a net balance left of $615,766.88 in cash, which sum, together with possession of all other property being held by the receiver, was ordered transferred to appellees herein, as the rightful owners thereof, by order of the trial court.

Thereafter the appellees herein, as the final winners in the long contested suit on the merits, filed motions seeking in effect to have all the necessary expenses of the receivership taxed against appellants herein as the losers in the case on the merits, who have strongly resisted such motions. Presumably because the regular trial judge for that area, Hon. Ben Charles Chapman, who appointed the receiver and directed and supervised all of the receiver's acts and transactions as such and who tried the case before a jury on its merits, preferred not to pass upon the issues here raised, his neighboring judge, Hon. Lewis M. Williams, who likewise heard and approved the receiver's final report, sat and heard these issues. The matters raised in appellees' motions and the replies thereto by appellants all duly filed came on for a hearing before the trial court without a jury with all parties present on June 17, 1957, and a full hearing thereon was had with the trial court taking the matter under consideration until August 27, 1957, when it rendered judgment finding that the receiver appointed, Tom Davis, had in all things and in every particular faithfully and fully performed his duties and functions as receiver and had obeyed all orders of the trial court with all of his accounts approved, after which he and his bondsmen had been fully discharged but that his total expenses for operations as a receiver had been $39,052.01; that the receiver had been appointed at the request of appellants herein and over the protest of the appellees herein and that a final judgment on the merits had determined that the property and funds in the hands of the receiver belonged to appellees herein and that appellants herein owned no interest

therein; that neither the receivership nor any acts of the receiver benefitted the property placed in his hands or the rightful owners thereof in any manner or made such property any more valuable; for which reasons the trial court further found that it was just and equitable for the parties for whose benefit the receivership was ordered to pay all of the expenses of the operations of the receivership and the same in the sum of $39,052.01 was adjudged against appellants herein who perfected an appeal from the judgment and have presented several points or assignments of error.

No attack has been made upon any of the receivership fees or the amounts of any other expenses authorized and finally approved by the trial court. The controlling question here presented is whether the fees and other expenses of the receiver should be charged against the losing parties in the final judgment on the merits or whether such should be charged against the earnings and funds accumulated by the receiver during his operations as such.

Again, we assert that the merits of the appointment of the receiver here involved had been previously determined by a final judgment entered and no wrongful acts on the part of anybody caused the appointment of the receiver, hence those matters have no place in this hearing. However, a receivership was sought for the protection of the interests of all parties and such was appointed in order that he may take charge and possession of all properties in controversy, care for, protect and preserve the same for the benefit and best interests of all parties, which, according to the record, he did. Such was recognized by the terms of the contract signed by all parties and previously herein shown when the parties thereto bound themselves in effect to cooperate with and under the functional operations of the receiver which would "inure to the benefit of the parties hereto." Any claims made or finding to the contrary is not supported by the record.

The terms of the contract referred to reveal that the parties thereto must have had some misgivings about the effect litigation may have upon proper developments of the oil and gas interests being then litigated when they executed the contract, but the execution of the contract by all parties authorizing the receiver to proceed must have relieved any and all fears of controversy over production. However, any claim made or finding directly or indirectly concerning the best interests of the parties and the benefits they may have derived from the property if no receiver had been appointed would be speculative and conjecture and not supported by the record. But, by a careful management of the property involved by the receiver under the direction of the trial court and with the cooperation of the parties, a substantial net sum of $615,766.88 was realized, which sum, together with other properties held by the receiver, were delivered to appellees herein, whom we believe, from the previously referred to language used in Paragraph 5 of the contract signed by them and all other parties, contemplated at the time that all of the receiver's fees and other expenses would and should be paid out of the earnings and funds accumulated by the receiver during his service as such. But, be that as it may, in any event, it is our opinion that the record conclusively reveals that the sale of the proceeds from production enhanced the value of the property so that appellees' interests therein were materially benefitted by the management and operations of the receiver. Any finding to the contrary is not supported by the record.

Concerning the rules of law and equity governing the payment of the fees and other necessary expenses of a receiver legally and properly appointed, as was shown to be true in the case at bar, the courts of many jurisdictions and the text writers have concluded that such fees and expenses should be charged against and finally paid out of the earnings or accumulated funds of the receiver during his serv-

ice, especially if the receivership has earned or accumulated sufficient funds to pay such, as was shown to be true in the case at bar.

36 Tex.Jur. 255–256, Sec. 131, says in part:

"The 'expenses' of a receivership consist of costs incident to the proceeding and expenditures in connection with the administration and preservation of the property, including the compensation of the receiver and his attorney. * * * As a rule, the expenses of a receiver are payable out of the fund or property in receivership, even though the receiver may have been improperly appointed, and regardless of the final outcome of the litigation. In other words, the expenses are a charge first upon the earnings or income of the property, and, if that is not sufficient, then upon the property itself or the proceeds of its sale."

In the same text and volume, pages 238–239, Sec. 118, we find the following language:

"In a sense, the operating expenses of a receiver are court costs, but in dealing with the application of funds in the hands of a receiver the statute recognizes a distinction between costs and expenses of operation incurred in the course of the receivership. The rule obtains in equity that operating expenses should be a first charge upon the earnings or operating income during the receivership; and in some circumstances, when the income is insufficient, such expenses are a charge upon the corpus of the property or the proceeds of its sale."

Numerous authorities are there cited in support of all the rules there announced.

We find the following language in 68 A.L.R. 878:

"Where there is no question as to the legality or propriety of the appointment of a receiver, it is generally held that the receiver's expenses are payable from the receivership fund, and are not taxable against the party who procured the appointment."

We find the following language in 45 Amer.Jur. 213, Sec. 275:

"The general rule is that costs and expenses of a receivership, including compensation for the receiver, counsel fees, and obligations incurred by him in the discharge of his duties, constitute a first charge against the property or funds in receivership, irrespective of who is ultimately successful in the suit or is ultimately liable to pay them, at least, in the absence of want of authority, impropriety, or wrongfulness in the obtaining of the receivership."

We find the following language in 75 C.J.S. Receivers § 302a, p. 978:

"In accordance with the general rule giving the court discretion to determine the liability for receivership expenses, the court in its discretion may, and as a general rule does, hold that a receiver's compensation and the expenses necessarily incurred by him in preserving and caring for the property under the order of a court of competent jurisdiction are primarily a charge on and should be paid out of the fund or property in his hands, regardless of the ultimate outcome of the principal suit, it being further held that, where the object of a receivership is to preserve the property pending a determination of the rights of the parties to the litigation with reference thereto, and there is no question as to the legality or propriety of the appointment of the receiver, the successful party, availing himself of the fruits of the litigation, must take them subject to the expenses of the receivership."

In the footnotes from the last foregoing quotation we find cases from many jurisdictions cited in support thereof and among them are several Texas cases. We refer par-

ticularly to the case of Moore v. Bridwell, Tex.Civ.App., 110 S.W.2d 196, 198, wherein the court there held that no wrongful act caused the appointment of receiver, just as no wrongful act caused the appointment of the receiver in the instant case, and the court there further held in effect that the trial court abused its discretion by taxing receivership fees and other expenses against the party who caused the appointment of a receiver, for which reason the trial court's judgment was there reversed and rendered. In that case the court cited and followed the rules pronounced in the case of Palmer v. State of Texas, 212 U.S. 118, 29 S.Ct. 230, 235, 53 L.Ed. 435, and quoted therefrom as follows:

" 'We think the circuit court of appeals was right in reversing the order of the circuit court in appointing a receiver. In that court the costs of the receivership were assessed against Palmer, the original complainant. The receivership has gone on pending the proceedings upon appeal, and we are of opinion that *justice will be done if the costs of the receivership are paid out of the fund realized in the Federal court, and it is so ordered.'* (Italics ours.)"

In support of its opinion in the Moore-Bridwell case [110 S.W.2d 198], the court further quoted from Clark on Receivers, Vol. 1, p. 879, Sec. 641, as follows:

" 'The just rule and that rule generally adopted by the courts is that property which is benefitted by the receivership should bear its share of the cost and expenses of the receivership including receiver's fees. If property is placed in the hands of a receiver and is preserved or otherwise acted upon for the benefit of the general creditors, they should pay the receivership expenses, including the receiver's fees.' "

Clark on Receivers, same volume, p. 869, Sec. 637, further says:

"The purpose of a receivership is to care for property involved, sometimes to administer it, realize it and distribute it to those entitled to it at the close of the litigation. In order to care for the property, administer it, realize it and distribute it certain expenses must be incurred. These expenses are incurred on the theory that they benefit the parties ultimately entitled to the funds or property."

Again on page 885, Sec. 638(c), Clark says:

"Under ordinary circumstances when the court has jurisdiction of the subject-matter of the parties to the suit and properly appoints a receiver, the property or funds themselves are liable for the expenses of the receivership including the receiver's fees."

We think such announced rules from Clark on Receivers as well as those cited from other authorities apply to this action wherein it is shown that the parties and the property benefitted under the operations of the receiver. It has likewise been shown that the trial court, sitting as a court of equity, took possession of the property involved and controlled it through its receiver appointed, thus creating the expenses involved.

It is our opinion that the record does not support some of the material findings made by the trial court and upon which findings it based its judgment, and we have been unable to find any rules of law or equity supporting the trial court's judgment in this case or in any case such as this. In a case such as this where a receiver has been legally and properly appointed, has proceeded cautiously as such for a long period of time under the orders of the trial court and with the cooperation of the interested parties, has enriched the value of the property involved by a net sum of $615,766.88, has made a final report reflecting all of its transactions and had the same approved by the trial court and has been released and discharged along with his bondsmen without any of his acts having been challenged, all of the authorities we have found say the fees and other necessary expenses of such receiver should

be paid out of the earnings and accumulated funds of a receivership and should not be adjudged against either of the parties to the suit regardless of the final outcome of the suit. In addition to the authorities previously herein cited we likewise cite the following authorities in addition to many others that may be cited: Espuella Land & Cattle Co. v. Bindle, 11 Tex.Civ.App. 262, 32 S.W. 582; Ferguson v. Dent, C.C., 46 F. 88, 98; Magnolia Petroleum Co. v. Zeppa, Tex.Civ.App., 70 S.W.2d 777–779; 53 C.J. 299–300; 75 C.J.S. Receivers § 301; Rex Refining Co. v. Morris, Tex.Civ.App., 75 S.W.2d 156–157; Payne v. Little Motor Kar Co., Tex.Civ.App., 266 S.W. 597, 598; New Birmingham Iron & Land Co. v. Blevins, 12 Tex.Civ.App. 410, 34 S.W. 828, 834; Taylor v. Taylor, Tex.Civ.App., 91 S.W.2d 394, 398. In the last case cited this Court stated the rule in the following language:

"The general rule is that the receiver is entitled to reasonable compensation, to be taxed as costs against the property and funds in receivership, and that without regard to the result of the litigation, and irrespective of the right of either party to recover costs of court against his adversary."

In support of the rule the court there cites many of the authorities we have previously cited herein.

It will be noted that under some of the authorities last cited the receivership fees were required to be paid out of the funds of the receiver or those accumulated by him even wherein the appointment had been held to be erroneous and vacated but all of them held that such expenses finally should be paid out of the receivership funds where he had been properly and legally appointed and where there were sufficient funds in the receivership to pay such. No authorities providing otherwise in such a case as we have here have been presented to us. The facts in the cases cited and relied upon by appellees are all distinguishable from the facts in the case at bar. Therefore, according to the record before us and under the rules of law and equity governing such it is our opinion that the trial court erroneously rendered judgment for appellees herein against appellants herein for the amount of receivership fees and other necessary expenses sought by appellees.

In the case of State ex rel. Fletcher v. District Court of Jefferson County, 213 Iowa 822, 238 N.W. 290, 294, 80 A.L.R. 339, the Supreme Court of Iowa aptly said in part:

"* * * the term 'abuse of discretion' does not imply a bad motive, or a wrongful purpose or perversity, passion, prejudice, partiality, moral delinquency, willful misconduct, or intentional wrong."

In the case of Borger v. Mineral Wells Clay Products Co., 80 S.W.2d 333, the Eastland Court of Civil Appeals said in effect that "judicial discretion" has been wrongfully exercised when it is not supported by positive law or commonly recognized legal or equitable principles. In the case of Huff v. Huff, 132 Tex. 540, 124 S.W.2d 327, 329, the Supreme Court held in effect that an abuse of discretion has been shown when an injustice has been done. In the case at bar it is our opinion that the trial court abused its discretion in rendering judgment against appellants herein, because the rules of law and equity do not support its judgment and an injustice has been done.

For the reasons stated we sustain the challenge of appellants to the trial court's judgment in taxing the fees and other necessary expenses of the receiver against the appellants herein and the said judgment is reversed and judgment is here rendered denying the appellees, and each of them hereinafter named and likewise named in the trial court's judgment, any recovery whatsoever and all court costs accrued in this action are hereby taxed against the said named appellees jointly and severally, the names of the said appellees as shown by the record being Ruth Legett Jones, Julia Jones Matthews, Edith Jones O'Donnell, each in-

dividually and as independent executrix and trustee of the estate of Percy Jones, deceased, John Matthews, Peter O'Donnell and The First National Bank in Dallas, a Corporation, as independent executor and trustee of the estate of Percy Jones, deceased, General Crude Oil Company, a Corporation, Continental Oil Company, a Corporation, Mrs. Maggie Wood, individually and as independent executrix of the estate of A. Wood, deceased, Horace B. Wood, The Superior Oil Company, a Corporation, Frank Stewart, Jimmy Stewart, individually and as trustee of Robt. Dale Stewart, Charles B. Wrightsman, Walter J. Crawford, Texas Gulf Producing Company, a Corporation. Reversed and rendered.