RUTH LEGGETT JONES ET AL V. J. R. STRAYHORN ET AL.

No. A-6890. Decided February 18, 1959.
Rehearing overruled March 25, 1959.
(321 S.W. 2d Series 290)

*Wagstaff, Hartwell, Alvis & Pope and Childers & Childers,* all of Abilene, *Shank, Dedman & Payne,* of Dallas, *Stubbeman, McRae & Sealey,* of Midland, *Watson & McGee,* of Roby, *Harry G. Dippel,* of Fort Worth, *Williams, Lee & Kennerly, Jesse J. Lee, Fountain, Cox & Gaines, Joyce Cox, Vinson, Elkins, Weems & Searls, Ben H. Rice III, Richard F. Burns, Andrews, Kurth, Campbell & Bradley, Erwin, Wagner & Hodson, Willard B. Wagner, Jr.,* and *Willard B. Wagner,* all of Houston, for petitioners.

The Court of Civil Appeals erred in holding that the trial court abused his discretion in determining under all the facts and circumstances that the respondents without title should be required to pay the fees of the receiver appointed at their instance, and who never took possession of the properties involved or did any act of benefit to said properties. Archer v. Ross, 262 S.W. 2d 213.

*McMahon, Smart, Sprain & Wilson* and *Hudson Smart,* all of Abilene; *Adkins, Folley, McConnell & Hankins,* and *A. J. Folley,* all of Amarillo, for respondents.

MR. JUSTICE NORVELL delivered the opinion of the Court.

We are here concerned with the allocation of receivership expenses as costs of suit. For convenience we shall refer to the numerous petitioners as the Jones plaintiffs and the respondents (except the State) as the Strayhorn defendants. The State of Texas was an intervening party in the District Court and is alligned with the Strayhorn defendants. When necessary, the State will be referred to by name. Upon intervening the State successfully sought the appointment of a receiver and a number of the defendants joined in the application. See, Jones v. Springer, Texas Civ. App., 256 S.W. 2d 1016, wherein the trial court's appointment of a receiver was upheld.

The primary action involved land in Kent County and the title issue was ultimately decided by this Court in favor of the Jones plaintiffs. Jones v. Strayhorn, 157 Texas 136, 300 S.W. 2d 623. Following such decision, the Honorable Lewis M. Williams, sitting for the Honorable Ben Charles Chapman, the regular judge of the District Court of Kent County, held a hearing and on June 17, 1957, entered an order which among other things discharged the receiver and approved previous orders directing the payment of certain monies as compensation for the receiver and his attorney. These items, together with other charges incurred in the course of the receivership, aggregated the sum of $39,052.01. As to this item the following finding and order was made by the trial judge:

"It further appearing to the Court * * * that it is just and equitable that the parties for whose benefit the receivership was ordered should be required to pay the costs of receivership and that neither the receivership nor any act of the Receiver in any manner benefited the property placed in receivership or the parties adjudged to be the owners thereof, or made such property more valuable than it was at the time of his appointment; and resulted in no benefit to the parties adjudged to be the owners thereof and who at all times resisted the appointment of the receiver,

"It is, therefore, Ordered, Adjudged and Decreed that the aforesaid costs of the Receiver and the Receivers expenses in the total sum of $39,052.01, be, and they are hereby taxed as costs, and are taxed one-half (½), jointly and severally, against the Defendants herein, to-wit: J. R. Strayhorn, R. L. Stringer, C. E. Leon, W. E. (Mike) Barron, W. W. Barron, E. B. Sullivan, Marvin O'Brien, Charles H. Reimers, the Livestock National Bank of Chicago, and one-half (½) against the State of Texas."

The Court of Civil Appeals reversed the order taxing the receivership expenses against the State and the Strayhorn defendants as costs of suit and held there was no evidence supporting the finding of the trial court above set out. Strayhorn v. Jones, 312 S.W. 2d 582. In so doing the lower appellate court erred.

■ Judging from the authorities cited in its opinion the Court of Civil Appeals has seemingly confused the rules applicable to the right of the receiver to have his compensation and the expenses incurred by him paid out of the receivership funds with the rules governing the allocation of costs as between the parties. From time to time the receiver, under proper orders of the court, retained certain sums from the receivership fund which he transferred to himself or to his attorney by check duly listed in his final report. No one questions these payments. No one seeks to recover them from the receiver who incidently is not a party to this proceeding, nor affected thereby. The Court of Civil Appeals quotes the following from Taylor v. Taylor, Texas Civ. App., 91 S.W. 2d 394, 398, no writ history:

"The general rule is that the receiver is entitled to reasonable compensation to be taxed as costs against the property and funds in receivership, and that without regard to the result of litigation, and irrespective of the right of either party to recover cost of suit against his adversary."

No one questions this rule. It is simply beside the point. It may be conceded at the outset that the Strayhorn defendants had a good faith yet invalid claim to the property involved in this litigation. It may likewise be conceded it was not improper for a receiver to be appointed to take charge of the property pending the final outcome of the suit. However, this circumstance does not in itself determine the issue of the allocation of costs as between the parties. In the nature of things, the appointment of a receiver must be based upon a preliminary estimate of the situation and while in this case we may assume that the parties who sought the appointment of a receiver were actuated by worthy motives, it nevertheless requires small "prophetic ken" to invision a case in which an adequate showing for a receivership could be made upon the preliminary application; yet, upon final hearing and thorough investigation the whole scheme might be exposed as a clever device to use our judicial tribunals as a means of depriving a rightful owner of his property through a studied program of harassment and oppression. While the bona fides of the unsuccessful claimant may be an

item to be considered by the trial judge in taxing costs it is by no means controlling.

The matter with us is governed by Rules Nos. 131 and 141 of the Texas Rules of Civil Procedure which read as follows:

Rule 131. "The successful party to a suit shall recover of his adversary all costs issued therein, except where otherwise provided.

Rule 141. "The court may, for good cause, to be stated on the record adjudge the costs otherwise than as provided by law or these rules."

These provisions seem to be a statement in rule form of the general practice. It is stated in Corpus Juris Secundum that:

"In the absence of statute, the receivership expenses may be adjudged against one or the other of the parties or apportioned between them in the discretion of the court." 75 C.J.S. 981, Receivers, Sec. 303(a).

The same authority points out that the apportionment of costs should be controlled by equitable principles and recognizes that while the ultimate success or failure of the party who requests the appointment of a receiver is not in itself controlling, it is nevertheless a prime factor in determining who shall ultimately pay the costs of the receivership. 75 C.J.S. 982, Receivers, Sec. 303(b).

The distinction between the receiver's right to compensation and the allocation of costs was pointed out in the early case of Espuella Land & Cattle Company v. Bindle, Texas Civ. App., 32 S.W. 582, no writ history. The Court said:

"We think the receiver's fees must be considered a part of the court costs, within the meaning of this statute, and, as such, are entitled to be paid out of the moneys that came into his hands. Ellis v. Water Co., 86 Texas 113, 23 S.W. 858; Id., 4 Texas Civ. App., 66, 23 S.W. 856. We see no reason why this statute[1] does not apply to a case in which the plaintiff recovers. We do not however, hold that it would prevent the court from making

---

1.—Acts 1889, Supp. Sayles' Civ. St. art. 1466, now article 2299, Vernon's Ann. Texas Stats, which provides that, "All moneys that come into the hands of a receiver as such receiver shall be applied as follows to the payment:
  1. Of all court costs of suit. * * * "

a proper equitable adjudgment of these costs, as between the parties to the suit, nor that a defendant is in any manner deprived of such remedies as he might otherwise have had, such a reconvention or separate suit for damages, to protect himself against loss occasioned by wrongfully taking his property from his possession, and having it squandered by an expensive receivership."

While the trial judge was authorized to vary the general rule as to taxing costs, if in his opinion the equities of the case required it, he did not choose to do so in the present case and set forth in his order the reasons which prompted him to tax costs against the unsuccessful parties to the litigation in accordance with Rule No. 131. There is something to be said in favor of such action. Receivership is one of the harshest remedies known to the law. When it is used to deprive an owner of the use of his property, injury invariably results. He who invoked the remedy must be prepared to assume some risk, for it cannot be said the final outcome of the lawsuit is a matter which should be disregarded in taxing costs, and we cannot rest the matter entirely upon the preliminary estimate of the need for a receivership.

While it was finally adjudged that the Jones plaintiffs were the owners of the real property involved, the effect of the decision of the Court of Civil Appeals was to saddle such parties with all the costs and expenses of the receivership and to deny to them a recovery over against the unsuccessful claimants who procured the receiver's appointment over their protests and objections.

As the trial judge undoubtedly had the discretionary authority to adjudge costs, the controlling question in this case is, did he abuse his discretion in failing to adjudge such costs against the Jones plaintiffs?

The cases which have held that a trial judge has abused his discretion in adjudging costs, including receivership expenses against the successful party, are those in which it appeared without dispute that such party has derived some "benefit" as a result of the receivership. It is not sufficient to establish an abuse of discretion simply to show that the receivership would have benefited the parties who applied for the receivership had they been successful in litigation.

The only way a "benefit" can be read into this case is to view the situation solely from the standpoint of the losing parties.

Had the Strayhorn defendants and the State actually owned the lands in dispute it would have been beneficial to them to have oil wells drilled thereon in order to prevent such lands from being drained by wells located on adjacent lands owned by the Jones plaintiffs. However the Jones plaintiffs were the owners of the disputed lands and if property ownership means anything, it means that the fruits and income from property belongs to the owner thereof and he is entitled to receive and control the same. This lawsuit and the receivership ancillary thereto were of no benefit to the Jones plaintiffs. They needed no additional oil wells. Ordinarily it is not necessary for one to protect himself from drainage from his own wells. However, there were no drilling operations carried out upon the disputed acreage and at the conclusion of this litigation the receiver did not turn over to the Jones plaintiffs a developed or more fully exploited land area. By agreement of the parties the drilling of additional wells was obviated, but a proportionate part of the proceeds derived from the entire Salt Creek Field was paid over to the receiver who simply held this money as a stakeholder pending the outcome of the litigation. The portion paid to the receiver was determined by the acreage proportion which the disputed area bore to the leasehold working interest of the entire Salt Creek Field.

The contract provided that:

"Upon the discharge of such Receiver, he shall pay over and distribute all money and property paid and delivered to him hereunder, (less the reasonable expenses of receivership allowed by the court, and the operating and development costs hereinafter mentioned), to the persons entitled thereto."

The quoted contractual provision set forth within the parenthesis does not relate to the allocation of costs *as between the parties*. This agreement has been carried out and the receiver has been paid his fees and expenses out of the fund which he collcted as a stakeholder.

The only "benefit," if such it can be called, that the Jones plaintiffs received from the receivership proceedings was one which they obviously did not desire, but sought to prevent, namely, having the receiver collect their money, hold it a certain length of time and eventually turn it over to them as the rightful owners, less $39,052.01, receiver's costs.

This is not the type of "benefit" which will justify an appel-

late court in saying, as a matter of law, that a trial judge has abused his discretion in adjudging costs against the losing parties in litigation.

The case of Moore v. Birdwell, Texas Civ. App., 110 S.W. 2d 196, no writ history, does not support the holding of the Court of Civil Appeals. In that case it was held that the trial court abused its discretion in adjudging costs against the appellants who merely filed a suit for title and possession of an eight-acre tract but did not request that a Receiver be appointed but on the contrary resisted said appointment.

The true basis of the holding of Moore v. Birdwell was that the appellee — the owner of the property — received benefits from the receivership. The Court said, "At the conclusion of this suit in the lower court, the Receiver turned over to him [the appellee] two producing oil wells fully equipped." Here the Receiver drilled no wells, improved no property, but simply took charge of a portion of the income produced from wells previously drilled by the Jones plaintiffs upon land owned by them.

We do not wish to be understood as holding that a trial judge upon sufficient equitable grounds may not adjudge receivership costs either in whole or in part against the prevailing party even where no benefit from the receivership accrues to such party. This is a matter which, under the rules, lies within the discretion of the trial court. The mere fact or circumstance that a trial judge may decide a matter within his discretionary authority in a manner different from what an appellate judge would decide if placed in a similar circumstance does not demonstrate that an abuse of discretion has occurred. When it is once decided that a trial judge exercising a "discretionary" authority has but one course to follow and one way to decide then the discretionary power is effectually destroyed and the rule which purports to grant such power is effectively repealed. What we do say is that the trial judge's recited finding set out in the forepart of this opinion has support in the evidence and that such judge did not abuse his discretion in adjudging the receivership costs in accordance with Rule No. 131.

The judgment of the Court of Civil Appeals is reversed and that of the trial court affirmed.

Opinion delivered February 18, 1959.

MR. JUSTICE SMITH, joined by CHIEF JUSTICE HICKMAN and ASSOCIATE JUSTICES GRIFFIN and GREENHILL, dissenting.

This Court is directly concerned in this particular lawsuit with the question of whether or not the appointment of the Receiver, Tom Davis, was legally made upon a showing of good cause. The record in this case shows that at the time of the appointment of the Receiver and at all times subsequent thereto, the respondents acted in good faith in seeking and maintaining the receivership. Such action was based upon a goodfaith belief that they were the owners of the land involved. The appointment of the Receiver was neither wrongful nor improper. Therefore, the fees and compensation and expenses of the Receiver and his attorney should be paid out of the funds in the Receiver's hands, and not charged against any of the parties to the lawsuit. The judgment of the trial court, holding to the contrary, has been reversed and rendered by the Court of Civil Appeals. 312 S.W. 2d 582. We would affirm the judgment of the latter court for the reasons now to be stated.

The original suit was one in trespass to try title. It was filed in the District Court of Kent County, Texas on October 24, 1951, by the petitioners against Strayhorn et al., respondents. The State of Texas intervened, claiming an undivided interest in the lands based upon alleged excess acreage, and seeking the appointment of a Receiver. R. L. Stringer, one of the defendants in the original suit, and the State of Texas, filed separate motions asking for the appointment of a Receiver for the protection of all interested parties. Upon a hearing, the trial court found that the lands in controversy were in danger of being lost, destroyed, or materially damaged because of producing oil and gas wells on adjacent lands, and that both applicants (respondents in the instant case), *because of their probable interest in the land,* were entitled to have a Receiver appointed. The petitioners excepted to the action of the trial court in appointing the Receiver, and, upon appeal, the action of the trial court was affirmed by the Court of Civil Appeals. See 256 S.W. 2d 1016; Strayhorn et al. v. Jones et al., Texas Civ. App., 289 S.W. 2d 321; Strayhorn et al. v. Jones et al., 157 Texas 136, 300 S.W. 2d 623.

The action of the trial court in appointing the Receiver and the necessity therefor is to be determined not by the ultimate result of the suit in retrospect, but by conditions probable or existing at the time of the appointment. The petitioners themselves instigated this litigation. They put the title in issue and alleged that the defendants-respondents were in possession of

the land. The receiver was appointed to protect the interests of all the parties involved. Such receiver at all times acted under the direction of the court. The trial court, at the time of the appointment of the Receiver, was confronted with a situation where the ownership of the land was in doubt and where waste would likely occur. In this case, the record shows that the receiver was necessary for all the parties in order that the property, valuable oil lands, would be protected and saved for whomsoever it was finally determined should be entitled to it. The receiver performed service that seems to us should be recognized as a beneficial service to all parties concerned. Under the orders of the trial court he took possession of the property in controversy, preserved and developed it, and through his efforts secured a pooling and unitization agreement with other adjacent landowners. He secured drilling permits in addition to the pooling agreement. Under the pooling agreement, it was immaterial where the oil came from so long as it was produced from the pool. After the affirmance by the Court of Civil Appeals of the action of the trial court in appointing the receiver, he proceeded under the direction of the trial court to take necessary steps for the drilling of wells on the lands placed in receivership. He obtained permits from the Railroad Commission for the drilling of six wells. He arranged for financing his operations. He filed suit in Kent County against Frank Stewart, one of the plaintiffs in the original suit, to gain access to a drilling site. At that time the petitioners filed suit against the Receiver in Travis County seeking to set aside his permits from the Railroad Commission to drill the wells. The Receiver entered into negotiations with various and sundry drilling contractors, and finally made a contract which he submitted to the trial court for approval shortly after his appointment was affirmed by the Court of Civil Appeals. At the time set for the hearing on the contract to drill the first well the proposition came up to unitize the land in receivership with surrounding lands in the Salt Fork Field. The trial court withheld its approval of the drilling contract until the unitization idea was explored. After several months a unitization contract was executed by the owners of the leasehold interests, the Governor, the Attorney General, the Land Commissioner, R. L. Springer, Charles H. Reimers, and Tom Davis, the Receiver, the latter acting under orders from the trial court. This contract, dated March 31, 1953, provided that the portion of the working interest from the entire Salt Creek Field was attributable to the land in receivership should be paid to the receiver, and that he would not drill any wells himself; that he would dismiss the suit brought by him against Frank Stewart and others, whereby he sought access to the land for drilling.

the first well authorized by the Railroad Commission; and that the petitioners would dismiss the suit in Travis County against the receiver which they had filed, and wherein they sought to set aside the receiver's permits to drill the six wells. This contract further provided that one-half of the income attributable to the working interest in receivership should be withheld by the drilling operators and applied first to the payment of the proportionate part of that property's cost of drilling and equipping the entire field, which amount was stated to be $278,830.00. It also provided that after the sum $278,830.00 had been paid out of the one-half withheld from the receiver, then the receiver was to receive all of the working interest attributable to the land in rceivership. The contract provided in paragraph 5 as follows:

"The Receiver, Tom Davis, is joining herein only in his capacity as Receiver of and for said property described in Exhibit '1,' and shall be bound hereby only for and during the period of such receivership. Upon the discharge of such Receiver, he shall pay over and distribute all money and property paid and delivered to him hereunder, (*less the reasonable expenses of receivership allowed by the court*, and the operating and development costs hereinafter mentioned), to the persons entitled thereto. The portion of such money and property to which operators may be entitled shall be repaid to them in the proportions set out under paragraph 3 above. The portion of such money and property to which the adverse claimants may be entitled shall be paid to them in accordance with the participation factors attributable to the acreage or tract of land recovered by each. Said participation factors shall be recomputed between the adverse claimants who may recover title to the acreage described in Exhibit '1,' or a part thereof, in the manner provided in said unitization agreements. There shall be no personal liability on the part of said Receiver, except for bad faith or misapplication of funds." (Emphasis ours).

Thus, it is seen that the petitioners are in no position to establish that nothing of benefit was performed by the receiver. The unitization contract alone enabled the receivership, for the benefit of the parties ultimately found to be entitled thereto, to receive the proceeds of the oil attributable to the lands in receivership, though from wells on other lands not in receivership, but in the pool. With the land in controversy in a lawsuit, filed by the petitioners and not by the respondents, under the circumstances, the receiver, acting under the direction of the trial court, was the only person who could effectively execute the

pooling agreement. It is not unreasonable to conclude that no producing oil company would have taken a chance of producing oil from a pool in which the lands in suit were included with only a part of the claimants thereto executing agreements to unitize, and without a receiver to receive the portion of the proceeds attributable to the lands in controversy. The unitization agreement put to rest any dangers or liabilities of the producers in the production of oil from the entire pool or the disputed acreage or in the production allocated to the disputed acreage or from other lands in the pool, thereby freeing such lands and all production therefrom from any controversy in so far as the producers were concerned, and they thus increased the undisputed acreage in the unit. This, certainly, was of great benefit to the producers, who are listed among the petitioners in this court. The only reason the receiver did not actually drill the wells and produce the oil was because of the contract which petitioners made with him. It is reasonable to conclude that in the absence of the contract, the receiver would have drilled and produced oil. As a result of the pooling agreement, and the drilling operations under the contract, the receiver collected the total sum of $749,410.59 in cash over and above the $278,830.00 with which he was credited as initial operational costs. Thus, there was and is an ample receivership fund out of which to pay the costs of receivership. It was a clear abuse of discretion for the trial court to refuse to order the costs paid out of the receivership fund.

The opinion of this Court in Strayhorn v. Jones, supra, demonstrates that the respondents and the intervenor, The State of Texas, had a probable interest in the land in controversy. Issues of facts were submitted to the jury and were answered adversely to the respondents' claim. We particularly refer to the State's claim. The State was claiming an excess in acreage. The petitioners claimed there was no excess acreage. The basis for such contention was the testimony that each of Sections 1, 3, and 5, as originally located by the Surveyor, L. S. Wise, did not contain more than 640 acres. The jury found, in answer to special issues, in favor of such evidence. The jury further found that Wise ran the lines of each of these three sections to be 1900 varas in length and on the course as called for in his field notes. We assume, for the purposes of this opinion, that the evidence raised an issue of fact on the question of claimed excess acreage. The Court of Civil Appeals impliedly, at least, so found. That court held that the findings of the jury were supported by the evidence. In addition to this, the opinion reflects that the parties presented many questions of law for determination by the trial

court, the Court of Civil Appeals, and this Court. The appointment of the Receiver was lawful and proper. We find no wrongful conduct on the part of the respondents.

The receivership functioned for some five years of the seven-year period of litigation of the various phases of this lawsuit. The trial court found that the Receiver faithfully and fully performed his functions and duties, and that he abided all orders of the court. The receivership accounts were approved and confirmed, and the funds on hand have been paid to the petitioners in accordance with the order of the trial court. The Receiver and his surety, General Casualty Company of America, have been in all things fully discharged from any liability on the Receiver's several bonds filed in connection with the receivership proceedings.

The trial court in the instant case found that it would be unjust and inequitable to require petitioners to pay any part of the costs of receivership. With this we do not agree. The court further ordered that the sum of $39,052.01, which had been previously paid out of the receivership fund, be taxed as costs, one-half jointly and severally against the defendants, J. R. Strayhorn et al. and one-half against The State of Texas. This action of the trial court was not justified by the record in this case. Where, as in the instant case, the costs of the receivership· have been paid out of receivership funds, and where there is no qustion as to the legality or propriety of the appointment of a Receiver, the Receiver's expenses are payable from the receivership fund. See 68 A.L.R. 878,883, and 889; Clark on Receivers, Volume 1, Chapter 22, p. 885; 75 C.J.S. 978, Sec. 302; High on Receivers (Fourth Edition), p. 963, Sec. 809a; 45 Am. Jur. 226, Sec. 293; Espuella Land & Cattle Co. v. Bindle, 11 Texas Civ. App. 262, 32 S.W. 582 (1895), no writ history; Ferguson v. Dent, 46 Fed. 88, 98; Beckwith v. Carroll, 56 Ala. 12; Moore v. Bridwell, Texas Civ. App., 110 S.W. 2d 196 (1937), no writ history. In this latter case the court held that the appellants, who were the losers on the merits, had a bona fide claim to the disputed tract of land and that "* * * they were justified in contesting by all legal means appellee's application to drill oil wells thereon." The court further found that the appellants (the losers) had prosecuted their suit in good faith, though they lost. The court cited and followed the case of Palmer v. State of Texas. 212 U.S. 118, 29 Sup. Ct. 230, 235, 53 L.Ed. 435 (1909). In the Palmer case, where the Receiver had been erroneously appointed by the Federal Court, the United States Supreme Court held:

"We think the circuit court of appeals was right in reversing the order of the circuit court in appointing a receiver. In that court the costs of the receivership were assessed against Palmer, the original complainant. The receivership has gone on pending the proceedings upon appeal, and we are of opinion that justice will be done if the costs of the receivership are paid out of the fund realized in the Federal Court, and it is so ordered."

In 45 Am. Jur. 226, Section 293, we find the following general rule:

"The general rule is that costs and expenses of a receivership are not to be taxed against parties to the litigation upon the basis of who is the unsuccessful party thereto. Although where final judgment goes against a plaintiff who has procured the appointment of a receiver, the costs and expenses incurred by the receiver in managing the property may, if there is no receiver's fund applicable thereto, be taxed against the plaintiff, it does not necessarily follow that all such costs should always be taxed against the plaintiff in every case in which the defendant prevails."

The rule is equally well settled in 75 C.J.S. 978, Sec. 302, supra:

"In accordance with the general rule giving the Court discretion to determine the liability for receivership expenses, the Court in its discretion may, and as a general rule does, hold that a receiver's compensation and the expenses necessarily incurred by him in preserving and caring for the property under the order of a court of competent jurisdiction are primarily a charge on and should be paid out of the funds or property in his hands, regardless of the ultimate outcome of the principal suit, it being further held that, where the object of a receivership is to preserve the property pending a determination of the rights of the parties to the litigation with reference thereto, and there is no question as to the legality or propriety of the appointment of the receiver, the successful party, availing himself of the fruits of the litigation, must take them subject to the expenses of the receivership."

In Clark on Receivers, Volume 1, Chapter 22, page 885, supra, we find the following:

"(c) PAYMENT OF RECEIVER'S FEES BY DEFENDANT. — Under ordinary circumstances when the court has jur-

isdiction of the subject matter of the parties to the suit and properly appoints a receiver, the property or funds themselves are liable for the expenses of the receivership including the receivers fees. Under such circumstances neither the plaintiff nor the defendant are liable for the receiver's fees. * * * It, therefore, follows that there are very few cases in which the receivership fees are placed on the defendant as distinguished between being placed on the property in the hands of the receiver whether such property belonged to the defendant or anybody else."

The petitioners rely upon the cases of Archer v. Ross, Texas Civ. App., 262 S.W. 2d 213, no writ history, and Shell Petroleum Corporation et al. v. Grays et al., Texas Civ. App., 87 S.W. 2d 289. These cases, in our opinion, are not controlling. In the Archer case, supra, the court, in view of findings of fraud and misconduct, correctly held that where the wrongful conduct of a party made receivership during pendency of suit necessary, and receivership was in all things proper, the trial court, upon entry of judgment, did not abuse his discretion in assessing all costs of receivership against the party who had acted wrongfully. In the instant case, there exists no wrongful acts on the part of the respondents invoking the application of equitable principles as found in Archer v. Ross, supra.

There are several features of the Shell Petroleum Corporation case, supra, which render it distinguishable from the instant case. For one thing, the trial court did not undertake to determine who should ultimately be required to pay the Receiver's fees. The court merely authorized the Receiver to retain the receivership costs out of the funds in his hands and taxed as a part of the court costs to abide the ultimate result of the suit. In the Shell case, supra, the original suit was filed in the District Court of McLennan County. The defendants filed a plea of privilege alleging venue to be in Gregg County. On appeal, the Court of Civil Appeals certified certain questions to the Supreme Court. This Court on June 23, 1933 decided that the venue of the case lay in Gregg County, and that since the plea of privilege should have been sustained, the trial court erred in appointing a Receiver. It was further certified that the defendant should have been allowed to supersede the order appointing a Receiver. See Shell Petroleum Corporation v. Grays, 122 Texas 591, 62 S.W. 2d 113. The question of whether the receivership was wrongful was not finally determined by the Court of Civil Appeals. We have not been cited to any further appellate procedure concerning this case, after it was ordered transferred

to Gregg County, Texas. In any event, the Shell Petroleum Corporation case, supra, has no application here.

The judgment of the Court of Civil Appeals should be affirmed.

Opinion delivered February 18, 1959.

Rehearing overruled March 25, 1959.