KIRBY et al. v. TRANSCONTINENTAL
OIL CO.

No. 977.

Court of Civil Appeals of Texas. Waco.
Dec. 4, 1930.

Rehearing Denied Dec. 31, 1930.

Carl Cannon and A. M. Blackmon, both of Groesbeck, for appellants.

Hiner & Pannill, of Fort Worth, and Mr. & Mrs. C. S. Bradley and J. E. & B. L. Bradley, all of Groesbeck, for appellee.

BARCUS, J.

On January 1, 1926, appellee owned under a mineral lease a seven-eighths interest in all minerals on 1,200 acres of land in Limestone county. It rendered said leasehold interest for state and county taxes for the year 1926 at $1 per acre, which rendition was accepted and approved by the tax assessor and so reported to the commissioners' court. On July 8, 1926, oil was found on portions of said land, and on October 8, 1926, the commissioners' court of Limestone county raised the assessed value for taxes on said mineral estate from $1,200 to $955,700, and directed the clerk to notify appellee to appear and show cause, if any, why said rendition should not be so raised. Appellee appeared and filed a protest and contended that said property should not be increased because: (1) It had, as provided by law, rendered said property at its full value to the tax assessor, and same had been accepted and approved by him; (2) it was too late for the tax assessor or board of commissioners to legally raise such valuation; (3) rendition of the property as originally made was its true and fair valuation for taxation purposes on January 1, 1926; (4) the rendition as proposed by the commissioners' court was greater than other property and would amount to an unequal and unjust taxation; (5) it objected to the county commissioners taking into consideration in determining the value of said property as of January 1, 1926, any facts or conditions that had happened after said date. The commissioners' court set the hearing for October 25th or 26th, and appellee appeared with its witnesses. and asked for a hearing. The commissioners' court, on said day, without giving appellee any opportunity to be heard on its contest, fixed the valuation of said property for taxation for the year 1926 at $955,700.

In January, 1927, appellee instituted this suit to cancel and set aside the order of the commissioners' court made on October 25th or 26th, raising the valuation of its property from $1,200 to $955,700, and for an injunction against the tax collector restraining him from collecting or attempting to collect same, and tendered into court the amount of taxes due on the $1,200 valuation, and asked for an order of court requiring appellants to accept same in full satisfaction of all taxes due against said property for the year 1926. Appellee alleged that said order of the commissioners' court should be set aside for the reasons set forth in its protest copied above and for the further reason that the commissioners' court had refused to hear the evidence which it tendered to show that said valuation was excessive, and further that the commissioners' court had erroneously and illegally valued said property for taxation for the year 1926, in that it had valued same as of October 1st, instead of January 1, 1926.

Appellants answered by a plea in abatement, contending that the district court had no jurisdiction to hear and determine this cause because appellee had not appealed from the judgment of the commissioners' court. They denied all of appellee's allegations, and affirmatively plead that the valuation as fixed by the commissioners' court in October was

a correct and valid valuation thereof as of January 1, 1926.

The cause was tried to a jury, and at the conclusion of the testimony the court instructed a verdict in favor of appellee. The trial court entered judgment overruling appellants' plea in abatement, and adjudged the order made by the commissioners' court on October 25th or 26th raising the valuation of appellee's property invalid, and required appellants to accept the money that had been tendered into court by appellee in full for all taxes due on said property for the year 1926.

▉ Appellants contend that the trial court was in error in overruling their plea in abatement; their contention being that the judgment of the commissioners' court in raising the tax valuation was valid and binding until and unless same was appealed from, and that, since appellee did not appeal, it could not by this proceeding cancel, annul, set aside, or vary said judgment. We overrule this contention. Article 5, § 8, of the State Constitution, gives the district court appellate jurisdiction and general supervisory control over the commissioners' court, with such regulations as may be prescribed by law, and gives the district court general original jurisdiction over all causes of action whatever for which a remedy or jurisdiction is not provided by law or by the Constitution. Articles 1908 and 1909 of the Revised Statutes give the same jurisdiction to the district court as that embraced in the above constitutional provision. There is no other provision in the Constitution or statutes conferring jurisdiction upon the district court over orders or judgments as made by the commissioners' court. No provision is made for the manner or method by which the district court may acquire appellate jurisdiction. The universal precedent in this state seems to be that a person aggrieved at any order or judgment of the commissioners' court can have same reviewed by bringing a direct suit in the district court in substantially the same manner and form as instituted by appellee in this case. It is the same procedure that has been many times invoked, and the trial as well as the appellate courts have rendered judgments either giving or denying the parties relief on the merits of the case, instead of dismissing same for want of jurisdiction. We think it may be accepted as a settled policy of our procedure that any one aggrieved at the order or judgment of the commissioners' court can have same reviewed by bringing a direct proceeding in the district court for said purpose. This is not a collateral attack, but a direct proceeding brought in a court of competent jurisdiction to test the validity of a judgment made by the commissioners' court.

▉▉ With reference to the merits of the litigation, the controlling issue is whether the commissioners' court has the right, after oil was found in July, 1926, on the property in controversy, to then revalue same for taxes, and take into consideration the fact that oil was found thereon in July. Appellants contend that said mineral lease estate was in fact worth as much on January 1st, before oil had been discovered, as it was in July after a large oil well had been brought in.

Article 7211 of the Revised Statutes specifically provides that property shall be assessed at its value as of January 1st, and provides, if there is any dispute between the property owners and the assessor, the commissioners' court shall hear evidence and determine the true value of the property on January 1st of the year for which it is to be rendered, and that the assessor or commissioners' court shall take into consideration what the property could have been sold for at any time within six months next before the 1st of January of said year. Article 7174 of the Revised Statutes provides that real property shall be valued at its true and full value in money, and that in determining same the assessor shall adopt as a criterion such sum and price as he believes the same to be fairly worth in money at the time such assessment is made, and that, in valuing real property, where there are minerals, same shall be valued at such price as same would probably sell for at a fair voluntary sale for cash, and that leasehold estates shall be valued at such price as they would bring at a fair voluntary sale for cash. Article 7149 of the Revised Statutes defines the word "value," or the term "true and full value," to mean the fair market value in cash which could be obtained therefor at the time and place of assessment.

The law seems to be well settled that the tax assessor and the commissioners' court are required, in fixing the value of the property for taxation, to fix same at its value as of January 1st of the year for which it is assessed. Article 7211, Revised Statutes; Humble Oil & Refining Company v. State (Tex. Civ. App.) 3 S.W.(2d) 559 (error refused), and authorities there cited. Appellants, as we understand, concede this to be the correct rule; their contention, however, is that, in determining what the true value of the property was as of the 1st of January they can take into consideration all subsequent developments with reference thereto that accrued after January 1st and prior to the time the commissioners' court finally approves the rendition as made by the owner to the tax assessor.

In view of the definition of the word "value" or the term "true and full value" as defined by the Legislature in article 7149, supra, and in view of the specific provisions of articles 7174 and 7211, Revised Statutes, which require the assessor or the commissioners' court to assess the property at its value

on January 1st and that in arriving at said value said officers shall take into consideration the price said property could have been sold for at any time within six months preceding said date, and the specific provisions in article 7174, supra, that real estate and especially leasehold estates shall be assessed at the price they would bring at the time of assessment, we think neither the tax assessor nor the commissioners' court has any right to take into consideration any condition that may develop or come to light after January 1st in arriving at the true value of property on January 1st. Since the law specifically provides that property shall be assessed on January 1st or as of said date, the Legislature evidently intended that, in the valuation of property for taxation, its value on said date should be the criterion under and by which same should be assessed. Whether the mineral lease estate which has been by our courts definitely fixed as an estate in fee to the minerals as distinguished from the fee in the surface of the land (Stephens County v. Mid-Kansas Oil & Gas Co., 113 Tex. 160, 254 S.W. 290, 29 A. L. R. 566), is a leasehold estate and governed for taxation purposes by the specific paragraph with reference to leasehold estates under article 7174, is not necessary for us to, and we do not, determine. Under said article, all real estate, whether leasehold or in fee, is to be valued as of January 1st. If the commissioners' court is permitted to take into consideration, in equalizing taxes on real estate or mineral estates, conditions that may arise subsequent to January 1st, then taxation could not be either just, equal, or final. There are many instances where tracts of land were, after the 1st of January and prior to the time same were assessed for taxes, or before the commissioners' court had approved the rolls, converted into town sites, and, if the same is to be valued when the rolls are approved at its then value by reason of same having been converted into a town site, the owner thereof on January 1st would perhaps be required to pay more tax than he actually received in cash for the land. If a mineral leasehold estate which is of nominal value on January 1st is thereafter sold and later oil is developed thereon prior to the time the commissioners' court approves its rendition for taxes, the party who owned the mineral leasehold estate on January 1st would be liable for more taxes than he actually obtained therefor. In order to prevent this uncertain and chaotic condition to exist, the Legislature has, under and by virtue of the statutes hereinbefore referred to, limited the tax assessor and commissioners' court to the conditions as they existed on January 1st or any time six months preceding such date to determine the value or true market value of said property for tax purposes. If any other rule were adopted, it would be dangerous for any party to deal in mineral leases.

■ As a matter of common knowledge, very few mineral leases are rendered for taxes, and, if the rule attempted to be invoked by appellants in this case was permitted, then at any time oil was found the tax assessor could go back for the years for which the mineral estates were not taxed after same had been sold and thereby severed from the surface estate and render same for the value said mineral leases were after oil had been discovered, on the same theory that appellants claim in this case, namely, that the oil was always there and the mineral lease was of the same value before it was discovered as after its discovery.

The record in this case shows without dispute that, but for the finding of oil on the property in July, 1926, the rendition as made by appellee and accepted by the tax assessor would not have been disturbed. Appellants do not contend either by their pleadings or testimony that the matter would have been in any way investigated or changed but for said contingency having happened, and, in arriving at the increased value for which said property was taxed appellants took into consideration only said fact and used a formula under and by virtue of which they attempted to ascertain the value of the oil that was extracted from said property after July 8th, and that would be extracted prior to January 1, 1927. Clearly, we think the commissioners' court was in error in attempting to raise the valuation for taxation purposes of the mineral estates in controversy and applying said rule thereto.

■ We are of the opinion that the commissioners' court erred in raising the assessed valuation for taxation purposes without giving appellee an opportunity to present its testimony under oath relative to the real value of said property as of January 1, 1926. Under articles 7211 and 7212 of the Revised Statutes it is specifically provided that a party shall render his property at what he thinks is its reasonable cash market value, and, if the tax assessor agrees therewith, it shall be assessed accordingly, but, if the assessor does not agree, it is his duty to fix the value and to notify the property owner and give the commissioners' court the information, and it is then the commissioners' court's duty, after hearing evidence under oath, to fix the valuation of the property as it thinks same was worth on the 1st of January. The commissioners' court does not have the arbitrary power or right to raise the valuation of property for taxation as given by the owner and accepted by the tax assessor without giving the owner an opportunity to present under oath any testimony that he may have relative to said value, and it is made the duty of the commissioners' court before it fixes said value to hear testimony under oath as to the real value thereof on January 1st.

475

We have examined all of appellants' propositions, and same are overruled, and the judgment of the trial court is in all things affirmed.