Charles HOOTEN, Orlando Fonseca, Rogelio Sanchez and El Paso County, Texas, Individually and in Their Capacity as El Paso County Commissioners and El Paso County, Appellants,

v.

Hector ENRIQUEZ, El Paso County Clerk, Appellee.

No. 08-93-00204-CV.

Court of Appeals of Texas, El Paso.

Sept. 16, 1993.

Rehearing Overruled Nov. 10, 1993.

C. Rex Hall, Jr., Allison & Associates, Austin, Jose E. Troche, El Paso, James P. Allison, Allison & Associates, Austin, for appellants.

Michael R. Wyatt, El Paso, for appellee.

Before OSBORN, C.J., and KOEHLER and BARAJAS, JJ.

## OPINION

BARAJAS, Justice.

This is an appeal from a final judgment granting declaratory and injunctive relief. Appellee, Hector Enriquez, the duly elected El Paso County Clerk, brought this action seeking to have the trial court declare the actions of Charles Hooten, Orlando Fonseca and Rogelio Sanchez, Appellants and El Paso County Commissioners, in amending Appellee's budget to be illegal. In three points of error, Appellants challenge the declaratory judgment and injunction. We reverse and render in part and affirm in part the judgment of the trial court.

---

1. In his original budget request, Appellee had requested the sum of $390,000 from the records preservation and automation fund, after having earlier projected revenues for the dedicated fund at approximately $600,000 for fiscal year 1993.

2. The fee for "Records Management and Preservation" under § 118.011 is for records management and preservation services performed by the county clerk after the filing and recording of a document in the records office of the clerk. The fee may only be used to provide funds for specific records preservation and automation projects. Tex.Loc.Gov't Code Ann. § 118.0216 (Vernon Supp.1993). While the fees collected pursuant to § 118.011 are to be transferred by the county clerk to the county treasury for deposit in the county treasury, the funds are required to be

## I. SUMMARY OF THE EVIDENCE

The record shows that on October 7, 1992, after receiving input from elected officials and department heads and conducting public hearings, the El Paso County Commissioners Court adopted a budget for the 1993 fiscal year. In the budget as adopted, the El Paso County Clerk's office was allocated approximately $1,086,000. The total allocated for the operation of the County Clerk's office included $753,000 from the general revenue account and $334,000 from the records preservation and automation fund.[1] The records preservation and automation fund ("dedicated fee account") was established pursuant to Tex.Loc.Gov't Code Ann. § 118.011(b)(2) (Vernon Supp.1993). Section 118.011 generally provides that a county clerk shall collect various fees for services rendered to any person. Specifically enumerated among the fees that must be collected by a county clerk is a records management and preservation fee in an amount not to exceed $5.00.[2] Tex. Loc.Gov't Code Ann. § 118.011(b)(2) (Vernon Supp.1993).

In the budget as adopted by the Commissioners Court for fiscal year 1993, $257,000 was allocated to the El Paso County Records Management and Archives Department, $165,720 of which was appropriated not from the county general fund, but rather from the dedicated fee account established for the benefit of the County Clerk's office pursuant to Tex.Loc.Gov't Code Ann. § 118.011.[3]

The record further shows that on December 22, 1992, in response to a letter from the

---

maintained in a separate account in order to insure compliance with the statutory requirement that such funds be used exclusively for specific records preservation and automation projects. *See also* Tex.Loc.Gov't Code Ann. §§ 113.001, 113.021(a), (b) (Vernon 1988).

3. The El Paso County Records Management and Archives Department was established by the El Paso County Commissioners Court for the purpose of providing micrographic projects for the local entities that comprise the county government as well as providing a records center where documents and microfilm are stored for preservation purposes. It is a separate and independent agency of El Paso County, not connected with the El Paso County Clerk's office.

El Paso County Auditor, the El Paso County Attorney advised that fees collected for records management and preservation may *not* be used to pay for records management and preservation services that are **not performed in the office of the county clerk.** *See also* TEX.ATT'Y GEN. LA–07 (1992). On February 16, 1993, Appellant Hooten requested an opinion from the County Attorney as to whether the Commissioners Court could transfer general revenue funds that are used for records management functions out of the County Clerk's budget and into the Records Management and Archives Department. On February 17, 1993, the Commissioners Court ordered that the sum of $165,720 be transferred from the general revenue account of the Records Management and Archives Department and returned the sum to the County Clerk's dedicated fee account.[4] Additionally, the Commissioners Court ordered that the identical sum of $165,720 be transferred from the general revenue account of the County Clerk to the general revenue account of the Records Management and Archives Department for the purpose of funding any shortfall.

On February 24, 1993, the County Attorney, in response to Commissioner Hooten's letter of February 16, 1993, advised the Commissioners Court and the County Clerk as follows:

> The commissioners court may be able to create a surplus by charging some expenditures which are currently charged to the county clerk's general fund budget to the county clerk's records and management and preservation budget. Of course, the only expenditures which may be legally charged to the county clerk's records management and preservation budget are those that are for "specific records preser-

vation and automation projects" to be performed in the office of the county clerk. To the extent that the commissioners court may be able to identify expenditures in the county clerk's general fund budget which may be legally charged to the clerk's records management and preservation budget, a surplus may be created in the county clerk's general fund budget. These surplus funds, if any, could then be transferred to the general fund budget for the records management and archives department.

Acting on the above advice, Appellant Hooten, purportedly acting on behalf of the entire Commissioners Court, tasked Ms. Rose Marie Sharp, Director of the Records Management and Archives Department, to conduct a study of the County Clerk's office for the purpose of identifying preservation and automation functions that were being performed by his deputies. In directing Ms. Sharp to conduct the study, Commissioner Hooten gave her a target amount of $165,720 that needed to be identified for eventual transfer from the County Clerk's general revenue fund into the budget for her department, i.e., the Records Management and Archives Department. The study was conducted with the expectation that funds from the dedicated fee account could be utilized to pay an appropriate percentage of the salaries of the deputies identified in Ms. Sharp's study as performing preservation and automation functions. The study was completed and forwarded to the Commissioners Court by Appellant Hooten on March 2, 1993.[5]

Relying on the above study, the Commissioners Court determined that a percentage of the salaries of the County Clerk's deputies, equaling the percentage of time spent on preservation and automation projects, could

---

4. The records show that it was the intent of the Commissioners Court to comply with the mandatory provisions of TEX.LOC.GOV'T CODE ANN. § 118.-0216 (Vernon Supp.1993), which provides that the $165,720 could only be used for records management and preservation services performed by the county clerk.

5. A committee from the Records Management and Archives Department, led by Ms. Sally Calzadilla, determined that 29 of the County Clerk's

deputies performed preservation and automation functions at least part of the time. As to all 29 deputies, the study indicated the percentage of the deputies' time spent on preservation or automation functions. The percentages ranged from approximately 25 percent to approximately 75 percent. The committee's assessment of the percentage of time allegedly spent on preservation and automation projects was based on the job descriptions, observation in the County Clerk's office, and conversations with the Clerk's appointed deputies.

be paid with funds from the dedicated fee account established for the benefit of the County Clerk's Office. When a portion of the Clerk's deputies' salaries was budgeted from the dedicated fee account, a surplus in the amount of $165,720 was created in the County Clerk's general revenue fund.

On March 3, 1993, on motion of Appellant Hooten, seconded by Appellant Fonseca, the Commissioners Court designated specific records preservation and management functions that were to be performed by those deputies appointed by the County Clerk. The Commissioners Court further designated that those deputies be paid from the proceeds of the dedicated fee account.[6]

## II. *PROCEDURAL HISTORY*

The El Paso County Clerk, Hector Enriquez, brought suit for declaratory judgment seeking to have Appellants' action in voting for the budget amendment transferring funds from the general revenue fund of the County Clerk to the Records Management and Archives Department to have been illegal, void, and unenforceable. Appellee further sought injunctive relief to require Appellants to reverse the budget amendment noted above and to return $165,720 back into the County Clerk's general revenue fund.

Trial was had to the Court, without a jury, and judgment was rendered May 24, 1993, permanently enjoining Appellants from transferring any funds from the "budget of the County Clerk in violation of the Texas Local Government Code." The trial court further ordered Appellants to reverse their actions of transferring funds out of the general revenue fund of the County Clerk, to replace the $165,720 earlier removed from that fund, to reverse any action taken to transfer funds from the dedicated fee account into the County Clerk's general revenue fund, and to reverse any action taken to transfer expenditures from Appellee's general revenue fund into the dedicated fee account.

The trial court declared the actions of Appellants, in their official capacities only, to have been an abuse of the discretion vested in them by law, in the following respects:

[I]n transferring $165,720.00 of general revenue funds from the general office operating expense account of the Office of the County Clerk into the account of the County Records/Archives Department; in purporting to transfer $165,720.00 dedicated fee revenue funds from the budget of the Office of the County Clerk—Records Preservation and Automation Fee Account, into the general office operating expense account of the Office of the County Clerk; in purporting to transfer expenditures previously allocated against the general office operating expense account of the Office of the County Clerk, so that they would be paid from the budget of the Office of the County Clerk—Records Preservation and Automation Fee Account; and in purporting to identify or designate certain functions in the Office of the County Clerk which constitute specific records preservation and automation projects. As an abuse of discretion, each of the acts listed herein is void.

The trial court additionally awarded Appellee the sum of $6,250 as reasonable attorney's fees, plus additional attorney's fees in the event of an appeal.

## III. *DISCUSSION*

In three points of error, Appellants contend that the trial court erred in finding that the Commissioners Court exceeded their authority and abused their discretion in transferring funds from the general revenue fund of the County Clerk's office to the account of the Records Management and Archives Department, that the trial court erred in ordering Appellants to transfer particular funds back into Appellee's general revenue fund, and that the trial court erred in awarding attorney's fees to Appellee. Central to the proper disposition of this appeal is an analysis of the supervisory authority of a district

---

**6.** The record shows that Appellants Hooten, Fonseca and Sanchez voted in favor of the designation, while El Paso County Judge Alicia Chacon and Commissioner Jimmy Goldman voted against such designation. Neither the County Judge nor Commissioner Goldman are named parties to this action.

court over the fiscal duties and responsibilities entrusted to a county commissioners court, an analysis of the constitutional and statutory relationships between the commissioners court and the county clerk, as well as a review of the methods utilized by the El Paso Commissioners Court in the instant case in declaring a budget surplus and effecting a transfer of funds.

### A. Supervisory Authority of a District Court over Acts of the County Commissioners Court

The Texas Constitution vests in the district court "appellate jurisdiction and general supervisory control over the County Commissioners Court, with such exceptions and under such regulations as may be prescribed by law." TEX. CONST. art. V, § 8 (Vernon 1993). The enabling statute empowering the district court to exercise such supervisory control merely repeats the terms of the constitution, TEX.GOV'T CODE ANN. § 24.020 (Vernon 1988), and with very few exceptions, such as the explicit provision for the appeal of commissioners court orders creating improvement districts, the legislature has not prescribed any specific manner by which the district court exercises such supervisory control. This lack of legislative direction has left to the courts the task of defining the scope of the district court's supervisory powers over the actions of the commissioners court.[7]

The commissioners court performs a legislative function when it creates the budget for the county's offices and departments. This budgetary power carries with it broad discretion in making budgetary decisions. *Commissioners Court of Caldwell County v. Criminal Dist. Attorney, Caldwell County*, 690 S.W.2d 932 (Tex.App.—Austin 1985, writ ref'd n.r.e.). This legislative func-

tion, when properly performed, is protected from the scrutiny of the judicial branch by the constitutionally-mandated separation of powers doctrine. *See* TEX. CONST. art. II, § 1.[8]

This separation of powers is not absolute, however. Article II, § 1 clearly contemplates the existence of express constitutional exceptions to its mandate. *See id.* The provisions of Article V, § 8 giving the district court general supervisory control over the commissioners courts is clearly one such exception. *Commissioners Court of Shelby County v. Ross*, 809 S.W.2d 754, 757 (Tex.App.—Tyler 1991, no writ). Thus, when the commissioners court acts beyond its authority in attempting to perform its legislative function, the supervisory jurisdiction of the district court comes into play.

The district court may reverse a commissioners court order only if the latter has acted arbitrarily, capriciously, collusively, fraudulently, or otherwise in abuse of its discretion. *See generally Ector County v. Stringer*, 843 S.W.2d 477, 479 (Tex.1992); *Stovall v. Shivers*, 129 Tex. 256, 103 S.W.2d 363 (1937); *Tarrant County v. Shannon*, 129 Tex. 264, 104 S.W.2d 4, 9 (1937); *Turner v. Cook*, 502 S.W.2d 824, 825 (Tex.Civ.App.—Corpus Christi 1973, no writ); *Live Oak County v. Lower Nueces River Water Supply Dist.*, 446 S.W.2d 14, 27 (Tex.Civ.App.—Beaumont 1969, writ ref'd n.r.e.). This rule is easy to state, but because of the broad discretion vested in the commissioners court, it can be applied only on a case-by-case basis.

### B. Constitutional and Statutory Authority of County Commissioners Court

The county commissioners court is a creature of the Texas Constitution; thus, its

---

7. Some district judges in Texas may labor under the impression that they have the responsibility of directly overseeing the actions of the commissioners court regardless of whether any formal action or suit has been filed. This informal supervision however, appears to be without any legal basis or effect. *See Kirby v. Transcontinental Oil Co.*, 33 S.W.2d 472 (Tex.Civ.App.—Waco 1930, writ ref'd).

8. Art. II, § 1 of the Texas Constitution reads as follows:

The powers of the Government of the State of Texas shall be divided into three distinct departments, each of which shall be confided to a separate body of magistracy, to wit: Those which are Legislative to one, those which are Executive to another, and those which are Judicial to another; and no person, or collection of persons, being of one of these departments, shall exercise any power properly attached to either of the others, except in the instances herein expressly permitted. TEX. CONST. art. II, § 1 (Vernon 1988).

powers are limited and controlled by the Constitution and the laws as passed by the Legislature. TEX.CONST. art. V, § 18(b); *See also Commissioners' Court of Madison County v. Wallace*, 118 Tex. 279, 15 S.W.2d 535, 537 (1929). Article V, § 18(b) of the Texas Constitution states:

> Each county shall, in the manner provided for justice of the peace and constable precincts, be divided into four commissioners precincts in each of which there shall be elected by the qualified voters thereof one County Commissioner, who shall hold his office for four years and until his successor shall be elected and qualified. The County Commissioners so chosen, with the County Judge as presiding officer, shall compose the County Commissioners Court, which shall exercise such powers and jurisdiction over all county business, as is conferred by this Constitution and the laws of the State, or as may be hereafter prescribed.

█ Along with constitutionally-derived jurisdiction over "county business," the commissioners court specifically has the statutory authority to oversee the fiscal operation of the county by approving and authorizing a budget. TEX.LOC.GOV'T CODE ANN. §§ 111.-031–111.043 (Vernon 1987 & Supp.1983). Generally, the allocation of county funds is a policy-making determination left to the sound discretion of the commissioners court. *Weber v. Sachse*, 591 S.W.2d 563 (Tex.Civ.App.—Dallas 1979, writ dism'd).

█ In establishing the county budget, the commissioners court, as a matter of course, receives input from various departments that operate within the established structure of county government. Absent an abuse of discretion, the commissioners court establishes manning tables for each of the respective departments and sets the rate of compensation for its employees. TEX.LOC. GOV'T CODE ANN. § 152.001 (Vernon 1988). In that regard, county officials may employ deputies and assistants **only** as authorized by the commissioners court. TEX.LOC.GOV'T CODE ANN. §§ 151.001–.004 (Vernon 1988).

The commissioners court may either grant or deny the authority to appoint such deputies or assistants in the exercise of its discretion regarding their need. Moreover, the commissioners court may limit the number of deputies or assistants authorized, but it has **no** power over naming the individuals to be appointed.[9] *Tarrant County v. Smith*, 81 S.W.2d 537, 538 (Tex.Civ.App.—Fort Worth 1935, writ ref'd). It is for that reason the commissioners court or the individual members of the court are expressly forbidden to attempt to influence the appointment of any person to an employee position authorized by the court. TEX.LOC.GOV'T CODE ANN. § 151.-004 (Vernon 1988).

In addition to the authority of the commissioners court to approve and authorize the county budget, the court possesses the specific statutory authority to effect the transfer of funds pursuant to TEX.LOC.GOV'T CODE ANN. § 111.041, by which:

(a) The commissioners court may spend county funds only in strict compliance with the budget.

(b) On proper application, the commissioners court may transfer an existing budget surplus during the fiscal year to a budget of a similar kind and fund. However, the transfer may not increase the total of the budget.

█ Given the above clear statutory provisions, we find that Appellants, as the majority voting members of the El Paso Commissioners Court in the instant case, have general authority to effect the transfer of surplus funds from the county general revenue account to another account of a similar kind and fund as provided for in TEX.LOC. GOV'T CODE ANN. § 111.041. Having found that the El Paso Commissioners Court does indeed have the specific statutory authority to transfer funds, under particular circumstances, does not, however, end the inquiry presented in the instant case. Such statutory authority of the commissioners court is impacted by the constitutional and statutory duties and responsibilities of the office of

---

9. The commissioners court may be subject to mandamus if it arbitrarily, or in abuse of its discretion, refuses to authorize the appointment of needed deputies or assistants. Op.Tex.Att'y Gen. No. 0–305 (1939).

county clerk as well as the manner in which Appellants created the "existing" surplus in the County Clerk's general revenue fund.[10]

### C. Constitutional and Statutory Authority of County Clerk

Article V, § 20 of the Texas Constitution creates the office of county clerk:

There shall be elected for each county, by the qualified voters, a County Clerk, who shall hold his office for four years, who shall be clerk of the County and Commissioners Courts and **recorder of the county, whose duties, perquisites and fees of office shall be prescribed by the Legislature,** and a vacancy in whose office shall be filled by the Commissioners Court, until the next general election; provided, that in counties having a population of less than 8,000 persons there may be an election of a single Clerk, who shall perform the duties of District and County Clerks. [Emphasis added].

TEX.CONST. art. V, § 20 (Vernon 1993).

■ In accordance with the Texas Constitution, our Legislature elected to further prescribe the duties of the county clerk by enacting language requiring the county clerk to keep the county records properly indexed and arranged. TEX.LOC.GOV'T CODE ANN. § 191.001(a) and (d) (Vernon 1988 and Supp.1993). In aid of the constitutional and statutory duties to be performed, the Legislature additionally authorized county clerks to appoint deputies. TEX.LOC.GOV'T CODE ANN. § 151.001 (Vernon, 1988).[11] A deputy clerk acts in the name of the county clerk and may perform all official acts that the

county clerk performs. TEX.LOC.GOV'T CODE ANN. § 82.005 (Vernon 1988).

■ As a corollary to the above functions, the Local Government Records Act ("the Act") addresses the subject of control and custody of information collected by county officers. The Act identifies the records management officers, the commissioners court, and the custodian as the three county government agents that have duties to manage and preserve county records. TEX.LOC. GOV'T CODE ANN. §§ 203.001–203.003, 203.-021–203.023 (Vernon Supp.1993). The records management officer is either an elected county officer or a person, office, or position designated by the governing body to serve in that capacity. *Id.* §§ 201.003(14), 203.001, 203.025. The custodian of the records is the appointed or elected public officer who, under the state constitution, state law, ordinance, or administrative policy, is in charge of an office that creates or receives local government records. *Id.* § 201.003(2). In applying the statutory language of the Act, as it relates to the El Paso County Clerk, we find that the County Clerk is the custodian of the local government records received or created by his constitutionally-created office.

■ The Act further provides that elected county officers, to include the duly elected county clerk, are designated the "records management officers" for their respective offices and are granted authority to develop and administer their records management programs. TEX.LOC.GOV'T CODE ANN. § 203.-002. In that regard, the county clerk, as the records management officer for the office, is

---

**10.** Neither party to this appeal has contested the issue of whether the transfer of funds in question was made to a budget of a similar kind and fund. The record nonetheless shows that the functions of the El Paso County Records Management and Archives Department in administering the Local Government Records Act for nonelective county offices are substantially similar to the functions of Appellee as the records management officer for the County Clerk's office.

**11.** Local Gov't Code § 151.001 (Vernon 1988) provides in pertinent part that a county officer who requires the services of deputies, assistants, or clerks in the performance of the officer's duties shall apply to the commissioners court of the county in which the officer serves for the authority to appoint the employees. The applica-

tion must be sworn and must state the number of employees required, the title of the positions to be filled; and the amounts to be paid the employees. In a county with a population of more than 190,000, the application must also describe the duties to be performed by the employees. TEX. LOC.GOV'T CODE ANN. § 151.001 (Vernon, 1988). This Court may take judicial notice of a matter for the first time on appeal. *City of Dallas v. Moreau,* 718 S.W.2d 776, 781 (Tex.App.—Corpus Christi 1986, writ ref'd n.r.e.); See also, *Eppenauer v. Eppenauer,* 831 S.W.2d 30, 31, n. 1 (Tex.App.—El Paso 1992, no writ). Accordingly, this Court will take judicial notice of the fact that the population of El Paso County is in excess of 190,000.

chiefly responsible for the administration of a records management program and the protection and preservation of the records of the office.[12]  *Id.* §§ 203.002, 203.023. Accordingly, we find that in performing these functions, the County Clerk has the exclusive and absolute discretion to develop policies and records management procedures that will preserve permanent records in the most efficient and cost-effective manner, as such policies relate to the County Clerk's office.  *Id.* § 203.002.

■ Although the Act clearly anticipates that elected county officers generally will establish independent records management programs, it allows the elected county officers to delegate their responsibilities to the office established by the commissioners court for nonelective county offices.  *Id.* § 203.-005(g).  But where the county officers do not choose to delegate their authority, the role of the commissioners court in managing the records of the elected county officers is largely one of support.  *See id.* § 203.003. Thus, it is clear that by the terms of the Act, Appellee, as the custodian and records management officer for the County Clerk's office, has complete responsibility and control over the administration of its records management[13] program unless it chooses to delegate or relinquish that authority.  The record is wholly devoid of any evidence that Appellee has abandoned or otherwise relinquished his constitutional and statutory duties and responsibilities.

**D.  Designation of Duties of Appointed Deputy County Clerks by the Commissioners Court**

■ In *Familias Unidas v. Briscoe*, 619 F.2d 391, 404 (5th Cir.1980), the Fifth Circuit Court of Appeals stated that in Texas, elected county officials hold "virtually absolute sway over the particular tasks or areas of responsibility entrusted to [them] by state statute."  We find that the constitutional establishment of the office of county clerk as the recorder of the county, coupled with the mandatory language of TEX.LOC.GOV'T CODE ANN. § 191.001(d) ("The county clerk shall keep the records . . . ."); Section 203.001 (the county clerk is the records management officer for the records of the officer's office); Section 151.001 (in a county with a population of more than 190,000, the application of county clerk to the commissioners court for authority to appoint deputies must describe the duties to be performed by the deputies); and, Section 82.005 (deputy clerk acts in the name of the county clerk), indicates a clear intention by the Legislature to vest the county clerk, and not the county commissioners court, with the **exclusive** authority to dictate to his or her deputies, the responsibility of carrying out the clerk's constitutional and statutory duties, including the designation of exactly what constitutes record keeping, preservation, and automation in the county clerk's office.[14]  By statutorily prescribing those duties and responsibilities of the coun-

12.  Additional responsibilities include adopting records control schedules, preparing electronic storage authorization requests and records destruction requests, and preserving and protecting certain records of their offices.  TEX.LOC.GOV'T CODE ANN. §§ 203.021, 203.026.

13.  Section 441.151(10) of the Government Code defines the term "records management":

"Records management" means the application of management techniques to the creation, use, maintenance, preservation, and disposal of records for the purposes of reducing the cost and improving the efficiency of recordkeeping. The term includes the development of records control schedules, the management of filing and information retrieval systems, the protection of essential and permanent records, control over the creation and distribution of forms, reports, and correspondence, and the

management of micrographs and electronic and other records storage systems.
Tex.Gov't Code Ann. § 441.151(10) (Vernon 1990).

14.  See TEX.ATT'Y GEN. LA–81 (1992) which advises that it is for the commissioners court to initially decide what particular projects are specific records preservation and automation projects. While Attorney General opinions are entitled to careful consideration, opinions are nonetheless advisory on the courts.  *Point Isabel Indep. School Dist. v. Hinojosa*, 797 S.W.2d 176 (Tex. App.—Corpus Christi 1990, writ denied) *citing Commissioners Court of El Paso County v. El Paso County Sheriff's Deputies Ass'n*, 620 S.W.2d 900, 902 (Tex.Civ.App.—El Paso 1981, writ ref'd n.r.e.).  Such opinions and letters advisory are entitled to great weight, unless clearly wrong. *Smith v. Panorama County Club*, 538 S.W.2d 268 (Tex.Civ.App.—Beaumont 1976, no writ).

ty clerk, the Legislature established a public policy to the effect that officers elected by the people to discharge public trusts and upon whose shoulders rests the responsibility for their proper discharge should be free to select persons of their own choice to assist them in the discharge of the assigned duties of their office, and in particular, to dictate what those duties are. *See Murray v. Harris*, 112 S.W.2d 1091, 1093 (Tex.Civ.App.— Amarillo 1938, writ dism'd). We therefore conclude that Appellants' attempt to designate the duties and responsibilities of deputy clerks appointed by the El Paso County Clerk was an act beyond the authority of El Paso Commissioners Court in attempting to perform its legislative function, constituted an improper interference with the constitutional and statutory functions of Appellee as El Paso County Clerk, and was an abuse of discretion. To hold otherwise would license commissioners courts to designate the specific duties and responsibilities of assistant district attorneys, assistant county attorneys, sheriff's deputies and judicial personnel, an act not contemplated within the constitutional and statutory framework of county government. Moreover, such actions would be an infringement on the responsibilities of those who have been constitutionally elected by the people to discharge the public trust.[15]

Having found that Appellants improperly interfered with the constitutional and statutory functions of Appellee, and thus abused their discretion in designating the duties and responsibilities of particular deputy county clerks as such duties and responsibilities related to the percentage of time any such deputy county clerks spent on preservation and automation of records, we find that Appellants exceeded their authority and further abused their discretion in transferring the

targeted sum of $165,720 from the general revenue fund of the County Clerk's office to the general revenue fund of the Records Management and Archives Department. Accordingly, Appellants' Point of Error No. One is overruled.

■ In Point of Error No. Two, Appellants contend that the trial court exceeded its authority in granting an injunction that ordered Appellants to transfer particular funds back into Appellee's general revenue fund. We agree.

The effect of the trial court's ruling that the Commissioners Court abused its discretion in transferring funds from the County Clerk's general fund to the general fund of the Records and Archives Department renders these actions void. The declaratory judgment rendering void the transfer of funds created in the Commissioners Court a ministerial duty to rectify its illegal actions.

■ While a district court may enjoin an act of the commissioners court that is beyond their authority or otherwise performed arbitrarily, capriciously, collusively, fraudulently, or in abuse of its discretion, the district court has no authority to direct a public official in how to perform a discretionary act. Further, a district court may not interfere with the discretionary functions of the commissioners court. *Matter of El Paso County Courthouse*, 765 S.W.2d 876 (Tex. App.—El Paso 1989, no writ).

As stated above, the fiscal policy of the county is the discretionary responsibility of the Commissioners Court. By enjoining the Commissioners Court to transfer the funds back into the general fund of the County Clerk, **from a particular fund,** the district court in effect substituted its own judgment

---

**15.** We need not address whether the Commissioners Court abused their discretion in appointing a committee from the Records Management and Archives Department to conduct a study of the County Clerk's office for the purpose of deciding the percentage of employee time spent on preservation or automation functions. As noted above, the officer who requires the services of deputies, assistants, or clerks in the performance of the officer's duties shall apply to the commissioners court of the county in which the officer serves for the authority to appoint the employees. TEX.LOC.GOV'T CODE ANN. § 151.001 (Vernon,

1988). After the receipt of an application, the commissioners court by order shall determine the number of employees that may be appointed and shall authorize their appointment. Section 151.002. The officer applying for the employees may appoint them only after the entry of the commissioners court order authorizing such appointment. *Id.*, §§ 151.002, 151.003. We note nonetheless that the study conducted is consistent with the obligation of the commissioners court to assess the need for deputies and assistants prior to authorizing their appointment.

for that of the Commissioners Court. *See Ector County,* 843 S.W.2d at 479. The Court stated in that case:

> In the area of a governing body's fiscal policy, the district court's role is necessarily a limited one:
>
> [A] court has no right to substitute its judgment and discretion for the judgment and discretion of the governing body upon whom the law visits the primary power and duty to act. Of course, if such governing body acts illegally, unreasonably, or arbitrarily, a court of competent jurisdiction may so adjudge, *but there the power of the court ends.* [Emphasis added].

*Id.* at 479, *citing Lewis v. City of Fort Worth,* 126 Tex. 458, 89 S.W.2d 975, 978 (1936).

Although the commissioners court's duty to correct its improper act is ministerial, it is still within the realm of its discretionary fiscal responsibilities. Thus, the district court may not order the commissioners court to allocate the funds to or from a particular office or department or direct a particular county commissioner to cast his or her vote in a particular manner. In the instant case, the district court was only empowered to adjudge the attempted allocation funds by the commissioners court as being improper and thus void. The district court did just that.

■ Additionally, we find that the trial court's injunction is overly broad and vague. Appellants were enjoined from "taking any further action to transfer funds from the budget of the County Clerk in violation of the Texas Local Government Code." This injunction purports to prohibit the Commissioners Court from in any way transferring funds out of the budget of the County Clerk. As noted above, the Local Government Code expressly authorizes the transfer of funds under the proper circumstances. *See* TEX. LOC.GOV'T CODE ANN. § 111.041 (Vernon 1988). Accordingly, we sustain Appellants' Point of Error No. Two, and dissolve the trial court's injunction in the instant case.

■ In their third and final point of error, Appellants assert the trial court erred in awarding attorney's fees to Appellee. The grant or denial of attorney's fees under the Uniform Declaratory Judgments Act lies within the sound discretion of the trial court, and its judgment will not be reversed on appeal absent a clear showing that the trial court abused its discretion.[16] *Edwin M. Jones Oil Co. v. Pend Oreille Oil & Gas Co.,* 794 S.W.2d 442 (Tex.App.—Corpus Christi 1990, writ denied).

■ The test for abuse of discretion is not whether, in the opinion of this Court, the facts present an appropriate case for the trial court's actions. Rather, it is a question of whether the court acted without reference to any guiding rules and principles. *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex.1985), *citing Craddock v. Sunshine Bus Lines,* 134 Tex. 388, 133 S.W.2d 124, 126 (Tex.Comm.App.—1939, opinion adopted). Another way of stating the test is whether the act was arbitrary or unreasonable. *Id.* at 242, *citing Smithson v. Cessna Aircraft Co.,* 665 S.W.2d 439, 443 (Tex.1982); *Landry v. Travelers Ins. Co.,* 458 S.W.2d 649, 651 (Tex.1970). The mere fact that a trial court may decide a matter within its discretionary authority in a different manner than an appellate judge in a similar circumstance does not demonstrate that an abuse of discretion has occurred. *Downer,* 701 S.W.2d at 242, *citing Southwestern Bell Telephone Co. v. Johnson,* 389 S.W.2d 645, 648 (Tex.1965) and *Jones v. Strayhorn,* 159 Tex. 421, 321 S.W.2d 290, 295 (1959).

■ In any proceeding brought pursuant to the Uniform Declaratory Judgment Act, the trial court may award costs and reasonable and necessary attorney's fees as are equitable and just. TEX.CIV.PRAC. & REM. CODE ANN. § 37.009 (Vernon 1986); *Duncan v. Pogue,* 759 S.W.2d 435 (Tex.1988). We find that the trial court, in awarding attorney's fees to Appellee, did not abuse its discretion. Accordingly, Appellants' Point of Error No. Three is overruled.

---

16. Appellants here elected not to attack the trial court's award of attorney's fees on the basis of insufficiency of evidence nor on their reasonableness. Instead, they simply maintain that in order to recover attorney's fees in a declaratory judgment action, a party must prevail.

Having overruled Appellants' Points of Error Nos. One and Three, and having sustained Point of Error No. Two and ordering the trial court's injunction dissolved, we reverse and render in part and affirm in part the judgment of the trial court.

KOEHLER, Justice, concurring.

Although I agree with the majority opinion in its conclusions, I would make it clear and emphasize in connection with Point of Error No. Two that Commissioners Court went further than necessary when on March 3, 1993 it approved the motion of Commissioner Hooten which designated not only specific records preservation projects in the County Clerk's office (an action within its discretion) but also designated specific employees and the percentage of their salaries and benefits who and which it required to be paid out of the records preservation fund as well (an action beyond its discretion).

TEX.LOC.GOV'T CODE ANN. § 118.0216 states that the fee collected by the County Clerk for "Records Management and Preservation" under Section 118.011 "may be used only to provide funds for specific records preservation and automation projects." It is not clear what the word "projects" means in its statutory context. The dictionary defines "project" among other things as "a planned undertaking" such as "a definitely formulated piece of research." Webster's New Collegiate Dictionary (Merriam 1980). Another dictionary defines the word as "an undertaking requiring concerted effort." American Heritage Dictionary (Houghton Mifflin 1985). Thus, whenever an employee of the county clerk is assigned a specific task or duty relating to records preservation, I would take it that the employee is engaged in a records preservation project. As the Court's opinion makes clear, it is the duty and responsibility of the County Clerk to designate what constitutes preservation of records and automation in his office and to assign his employees

specific tasks, all or some of which may relate to records preservation and automation. He does not, however, have the unbridled discretion to expend money out of the Records Management and Preservation Fund as he sees fit.

It is the Commissioners Court that has the budgetary duty and responsibility of allocating all county funds, including ear-marked funds such as the one involved here. In order to carry out this duty, it necessarily follows that the Commissioners Court must make the initial determination from information furnished by the County Clerk and/or from its own independent study of what kinds of work constitute "preservation of records and automation." See Tex.Att'y Gen. LA–81 (1992).[1] I would not presume to tell the members of the Commissioners Court how to go about making this determination and yet avoid attempting to designate or dictate the specific duties and responsibilities of deputy clerks. There are undoubtedly several ways this can be accomplished without running afoul of constitutional and statutory prohibitions.

---

1. In her summary, the assistant attorney general stated in part: "The county commissioners court has sole discretion to determine how the county will spend revenues generated by ... [the records preservation and management fees] ..., so long as the court uses the fee for the purpose stipulated in section 118.0216 of the Local Government Code: 'specific records preservation and automation projects.' Whether a particular project is a 'specific records preservation and automation project' is an issue that the county commissioners court must decide in the first instance." Tex.Att'y Gen. LA–81 (1992).