

# Office of the Attorney General
## State of Texas

**DAN MORALES**
ATTORNEY GENERAL

November 17, 1998

The Honorable Bobby Lockhart
Bowie County Criminal District Attorney
P.O. Box 3030
Bi-State Justice Center
Texarkana, Texas 75504

The Honorable Dan C. Clower
Walker County Auditor
1100 University Avenue
Huntsville, Texas 77340

The Honorable Jeffrey D. Herrington
Anderson County Criminal District Attorney
500 North Church Street
Palestine, Texas 75801

Opinion No. DM-492

Re: Whether the commissioners court or the county clerk is authorized to control the expenditure of records management and preservation fees collected under Local Government Code section 118.0216, and related questions (RQ-953)

Dear Sirs:

You each ask questions regarding the Local Government Code section 118.0216 records management and preservation fee. Because your questions raise similar issues, we answer them together. These issues fall into two general categories. First, your questions ask us to determine whether the commissioners court or the county clerk controls the use of funds collected under section 118.0216. For the reasons discussed below, we believe that the commissioners court and county clerk[1] must agree on the expenditure of funds collected under section 118.0216 and that, in effect, neither the court nor the clerk may use these funds without the cooperation of the other. Second, your questions ask us to determine whether section 118.0216 funds may be used only to pay for projects preserving and automating records that have already been filed and recorded in the county records or whether they may also be used to pay for the cost of recording documents by microfilm as they are initially filed. We conclude that section 118.0216 funds may be used to pay for the costs of recording documents by microfilm, but only if certain conditions are met.

---

[1]We assume that the county clerks in your counties have not delegated their records management duties to the county records management officer under Local Government Code section 203.005(g).

We briefly describe the facts giving rise to your requests. Mr. Lockhart asks whether the commissioners court or the county clerk decides how the records management and preservation fee is used. Apparently, the commissioners court in his county allocated a portion of the funds collected under section 118.0216 for microfilming records. He informs us that "[t]he County Clerk feels these funds and the allocation/expenditure of the fees collected through the records management and preservation fee are to be used solely at her discretion." Mr. Herrington asks whether the commissioners court or the county clerk decides whether to discontinue funding a records preservation and automation project paid from section 118.0216 funds. In 1995, the commissioners court in his county approved the request of the county clerk to expend section 118.0216 monies to lease certain equipment for use by the county clerk. Later, in 1996, the county clerk decided that the lease was not an appropriate use of section 118.0216 funds. The commissioners court voted to discontinue payments on the lease only after the county clerk threatened legal action. Finally, Mr. Clower informs us that the district attorney in his county has opined that the section 118.0216 account may not be used to pay for microfilming and indexing the documents filed with the clerk's office on a daily basis and that the fee may only be used for specific records preservation and automation projects as determined by the county clerk.[2] Mr. Clower believes that the section 118.0216 account may be used to pay for the microfilming and indexing of documents filed on a daily basis in the clerk's office, if the commissioners court determines that this process is a specific records preservation and automation project.[3]

Section 118.0216 authorizes, but does not require a county clerk to collect a records management and preservation fee

> for the records management and preservation services performed by the county clerk after the filing and recording of a document in the records of the office of the clerk. . . . The fee may be used only to provide funds for specific records preservation and automation projects.

---

[2]Mr. Clower informs us that the county clerk's employees microfilm the records filed in the clerk's office using a camera and film provided by a third party vendor. The clerk sends the microfilm to the third party vendor who makes an archival print of the film. The third party vendor also compiles indices of the clerk's records, binds the indices and sends them to the county clerk's office. Letter from Dan C. Clower, Walker County Auditor, to Sarah J. Shirley, Office of the Texas Attorney General (Jan. 22, 1997).

[3]Mr. Clower's request also raises numerous other questions about allocation of fees collected under Local Government Code sections 118.012 and 118.013 and about the authority of the county auditor and the commissioners court regarding county expenditures. We will address some of his questions in this opinion. Other questions may be mooted by this opinion, and his questions about the general authority of the county auditor may be answered by consulting prior opinions of this office. *See* Attorney General Opinions DM-440 (1997), H-171 (1973); Letter Opinion No. 93-91 (1993).

Local Government Code section 203.003(5) requires a commissioners court to "establish a county clerk records management and preservation fund for fees subject to Section 118.0216 and approve in advance any expenditures from the fund."

Prior letter opinions of this office, all dating from 1992,[4] address control of funds collected under section 118.0216. The conclusions of these opinions can be summarized as follows: Fees collected under section 118.0216 are not under the control of the county clerk.[5] The county clerk must deposit the fees he or she collects with the county treasurer.[6] The county treasurer must deposit the funds in a separate account in order to ensure that the monies are used only for the specific purpose set forth in section 118.0216.[7] The commissioners court is responsible for allocating the monies collected, but may expend them only "for specific records preservation and automation projects" in the office of the county clerk.[8] The determination whether a particular project will aid in preserving or automating county clerk records must be made by the commissioners court in the first instance.[9] Decisions regarding records management and preservation fee fund expenditures are not within the sole discretion of the county clerk.[10]

In 1993, an appellate court addressed control of funds collected under section 118.0216. *See Hooten v. Enriquez*, 863 S.W.2d 522, (Tex. App.--El Paso 1993, no writ). We re-examine our prior opinions in light of that case.

*Hooten* arose from a dispute between the commissioners court and county clerk in El Paso County. The commissioners court attempted to allocate section 118.0216 funds to the county records department.[11] The county attorney then advised the commissioners court that the funds could only

---

[4]*See* Letter Opinion Nos. 92-81 (1992); 92-77 (1992) (withdrawn Jan. 5, 1998); 92-7 (1992).

[5]*See Letter Opinion Nos.* 92-81 (1992) at 2-3; 92-7 (1992) at 2.

[6]*See* Letter Opinion Nos. 92-81 (1992) at 2; 92-7 (1992) at 2.

[7]*See* Letter Opinion No. 92-7 (1992) at 2; *see also* Local Gov't Code § 203.003(5) (requiring commissioners court to establish county clerk records management and preservation fund for fees subject to section 118.0216 and to approve in advance any expenditures from fund).

[8]*See* Letter Opinion Nos. 92-81 (1992) at 2-3; 92-7 (1992) at 2-3.

[9]*See* Letter Opinion Nos. 92-81 (1992) at 2-3; 92-7 (1992) at 3.

[10]*See* Letter Opinion No. 92-7 (1992) at 3.

[11]*Hooten*, 863 S.W.2d at 525-26.

be used for records preservation and automation projects in the office of the county clerk.[12] In response, *the commissioners court appointed a county employee to conduct a study of the county clerk's office.* The employee was directed to identify preservation and automation functions performed by deputy county clerks that could be funded from the section 118.0216 account. The goal was to create a surplus in the county clerk's general fund account that could then be transferred to the county general fund account for the county records department.[13] After the completion of the study, the commissioners court "designated specific records preservation and management functions that were to be performed by those deputies appointed by the County Clerk"[14] and "designated that those deputies be paid from the proceeds of the dedicated [section 118.0216] fee account."[15]

The majority opinion's analysis is based on a review of the constitutional and statutory duties of the commissioners court and the clerk. In addition to constitutionally derived jurisdiction over "county business,"[16] the opinion notes that "the commissioners court specifically has the statutory authority to oversee the fiscal operation of the county by approving and authorizing a budget. . . . *Generally, the allocation of county funds is a policy-making determination left to the sound discretion of the commissioners court.*"[17]

The majority opinion also notes, however, that the legislature has vested the county clerk with the duty to "keep the county records properly indexed and arranged."[18] A county clerk, who has not delegated records management to the county records management officer, "is the custodian of the local government records received or created by his constitutionally-created office"[19] pursuant to the Local Government Records Act, *see* Local Gov't Code chs. 201-205. Such a county clerk "has the exclusive and absolute discretion to develop policies and records management procedures that will preserve permanent records in the most efficient and cost-effective manner, as such policies relate to the County Clerk's office."[20] With regard to county officers who have not delegated records management authority to the county records management officer, "the role of the commissioners

---

[12]*Id.* at 526.

[13]*Id.*

[14]*Id.* at 527.

[15]*Id.*

[16]*Id.* at 529.

[17]*Id.*

[18]*Id.* at 530.

[19]*Id.*

[20]*Id.* at 531.

court in managing the records of the elected officers is largely one of support."[21] For this reason, the court concluded that the El Paso county clerk, who had chosen to retain the records management function, "has complete responsibility and control over the administration of [the county clerk's office] records management program."[22]

Finally, the majority opinion also relies on the fact that the legislature has vested "the county clerk, and not the county commissioners court, with the **exclusive** authority to dictate to his or her deputies, the responsibility of carrying out the clerk's constitutional and statutory duties, including the designation of exactly what constitutes record keeping, preservation, and automation in the county clerk's office."[23] On the basis of the county clerk's authority to manage records within the county clerk's office and the county clerk's authority to appoint and direct deputy clerks, the majority opinion concludes that the commissioners court's attempt to designate records management duties and responsibilities of deputy clerks constituted an improper interference with the constitutional and statutory functions of the county clerk.

The concurring opinion, although agreeing with the majority opinion in its conclusions, takes a narrower approach. It emphasizes that the commissioners court exceeded its authority when it

> designated not only specific records preservation projects in the County Clerk's office (an action within its discretion) but also designated specific employees and the percentage of their salaries and benefits who and which it required to be paid out of the records preservation fund as well (an act beyond its discretion).[24]

The concurring opinion also states

> it is the duty and the responsibility of the County Clerk to designate what constitutes preservation of records and automation in his office and to assign his employees specific tasks. . . . He does not, however, have the unbridled discretion to expend money out of the Records Management and Preservation Fund as he sees fit.

> It is the Commissioners Court that has the budgetary duty and responsibility of allocating all county funds, including ear-marked funds such

---

[21]*Id.*

[22]*Id.*

[23]*Id.* (emphasis in original).

[24]*Id.* at 534.

as the one involved here. In order to carry out this duty, it necessarily follows that the Commissioners Court must make the initial determination from information furnished by the County Clerk and/or from its own independent study of what kinds of work constitute "preservation of records and automation." See Tex. Att'y Gen. LA-81 (1992).[25]

From our perspective, *Hooten* is a difficult case. A footnote in the majority opinion may be read to disagree with one of our opinions, Letter Opinion No. 92-81, but does not expressly overrule it.[26] On the other hand, the concurring opinion, which deals directly with the issue of authority to make expenditures, relies on that letter opinion for the proposition that only the commissioners court has the authority to allocate funds and that the commissioners court must make the initial determination regarding what work constitutes records preservation and automation.[27]

Based on the *Hooten* case, we believe that we must modify our prior opinions to the extent they suggest that the county clerk has no role in deciding how funds in a section 118.0216 account are used. We believe that the majority opinion in *Hooten* requires both the county clerk and the commissioners court to have a role in that decision. While only the commissioners court has the authority to allocate funds in a section 118.0216 account, the commissioners court cannot dictate how work is done in the county clerk's office or who does it. In other words, despite its control over the county budgeting process, the commissioners court is not authorized to dictate how the county clerk carries out his or her constitutional and statutory duties. Unless a county clerk has delegated records management duties to the county records management officer,[28] records management in the county clerk's office is within that officer's sole discretion. On the other hand, the county clerk has no power to allocate section 118.0216 monies. The authority to allocate these funds lies with the commissioners court alone, subject to judicial review for abuse of discretion.

In sum, *Hooten* indicates both that funds may not be allocated from a section 118.0216 account unless the commissioners court approves the expenditure and that a records management and preservation project may not be undertaken in the county clerk's office unless the county clerk approves it and directs his or her deputies to undertake it. Thus, as a practical matter, both the commissioners court and the county clerk must ultimately agree on the use of section 118.0216 monies. We do not believe, for example, in answer to Mr. Lockhart's question, that it would be proper for a commissioners court to enter into a contract for records automation or preservation in the

---

[25]*Id.*

[26]*Id.* at 532 n.14, 531-32.

[27]*Id.* at 534.

[28]Again, we assume that the county clerks in your counties have not delegated their records management duties to the county records management officer.

office of the county clerk that the county clerk does not approve, for the effect of such an action would be to dictate how the county clerk carries out the constitutional and statutory duties of that office. Nor, in answer to Mr. Herrington's question, do we believe it is proper for a commissioners court to insist on continuing funding of a records automation or preservation project that the county clerk no longer approves.

We now address the second issue raised by your requests. As we have noted, section 118.0216 of the Local Government Code designates the "Records Management and Preservation" fee authorized by section 118.011 "for the records management and preservation services performed by the county clerk *after the filing and recording of a document* in the records of the office of the clerk." (Emphasis added.) The language of this provision reflects the traditional method whereby the clerk records instruments in a "well-bound book," *see* Local Gov't Code §§ 191.002, 193.001, .003, and records management and preservation will occur later, for example, when the paper records are stored under conditions that will prevent deterioration or are copied in a more permanent media.

However, the legislature has expressly authorized a county clerk to use a microfilm process to maintain records. *Id.* § 193.008(a); *see id.* ch. 204.[29] In that case, "[t]he clerk shall record each class of record on a separate series of rolls of microfilm." *Id.* § 193.008(c). "Each roll of microfilm . . . is considered to be a bound volume or book." *Id.* Microfilm may be used to maintain and preserve public records pursuant to chapter 204 of the Local Government Code. *Id.* § 204.002. The use of microfilm merges the recording process with the process of preserving and maintaining records. Under such circumstances, may the records management and preservation fee be used to pay for the microfilming of the instruments?

The legislature has expressly authorized, and in fact encouraged, county clerks and other custodians of records to use microfilm to maintain records. Using a single process to both record and preserve documents promotes efficient records management. It is both inefficient and absurd to conclude that the records management and preservation fee may be used to pay for microfilming documents only if the clerk first records them manually in a book. Statutory provisions will not be construed as to lead to absurd conclusions if any other construction can reasonably be indulged in. *Cramer v. Sheppard*, 167 S.W.2d 147 (Tex. 1942). The word "after" should not be so heavily emphasized that we are compelled to reach an absurd and inefficient result. Accordingly, a county is not prohibited from spending the records management and preservation fee on using microfilm technology to record documents if the use of microfilm is within a "specific records management and preservation project[]."

---

[29]Local government records may also be maintained electronically. *See* Local Gov't Code § 201.004.

A county clerk also collects fees "for filing or filing and registering [or recording], including indexing"[30] documents authorized or required to be filed in the personal property or real property records of the county.[31] These basic filing fees must be deposited with the county treasurer[32] and allocated by the commissioners court as part of the county budget process.[33] Pursuant to section 152.011 of the Local Government Code the commissioners court is responsible for setting the compensation, office and travel expenses, and other allowances for county and precinct officers and employees paid wholly from county funds, including the compensation, office and travel expenses of the county clerk.[34]

Mr. Clower asks whether the amount of filing fee revenue collected under the Local Government Code[35] for filing, recording, and indexing real and personal property records is "dedicated" for payment to the third party vendor that provides microfilming equipment and services for these purposes when the records are filed with the clerk.[36] None of the statutes cited require such a dedication of the fees, nor are we aware of any other basis for requiring their dedication.[37]

We reiterate that section 118.0216 requires the records management and preservation fund to be spent for specific records preservation and automation projects, subject to the commissioners court's advance approval of such expenditures, and the fund may not be diverted from its statutorily assigned purposes to pay other expenses of the clerk's office. If the use of microfilming technology meets the criteria set out in article 118.0216, the records management and preservation fee may be used to fund it.

---

[30]Local Gov't Code §§ 118.012, .013.

[31]See id. §§ 118.011(a)(1), (2), .012, .013.

[32]See Tex. Const. art. XVI, § 61(fees earned by district, county, and precinct officers shall be paid into county treasury in counties where county officers are compensated on a salary basis); Local Gov't Code § 113.001.

[33]See Local Gov't Code §§ 111.003, .004(b)(2).

[34]See Attorney General Opinion H-1243 (1978) at 2.

[35]Local Gov't Code § 118.011(a)(1), (2).

[36]See supra note 2.

[37]An attempt to dedicate those funds might also raise an issue under article III, section 52 of the Texas Constitution, which places certain conditions on the expenditure of public funds by political subdivisions in order to insure that the expenditure serves public purposes. Attorney General Opinions DM-317 (1995), JM-1030 (1989). Among other limitations, a political subdivision must receive an adequate return for its expenditure of public funds. Attorney General Opinions DM-317 (1995), JM-1030 (1989). This limitation might well be violated by the dedication of a revenue source to a particular contract unless payments are limited to the value of services received.

Finally, we note that section 118.0216 of the Local Government Code does not define "specific records preservation and automation projects." A legislative definition of this term as well as additional legislative clarification of section 118.0216 as to the use of the records management and preservation fee would greatly assist the counties in applying this provision.

## S U M M A R Y

Neither the commissioners court nor the county clerk controls the use of the records management and preservation fees collected under section 118.0216 of the Local Government Code. As a practical matter, both must agree on the use of the funds. Funds collected under section 118.0216 may be used to pay for the costs of initially recording documents by microfilm, but only if the commissioners court determines that this process is part of a specific records preservation and automation project within section 118.0216 of the Local Government Code. The records management and preservation fee must be spent for specific records preservation and automation projects, subject to the commissioners court's advance approval, and may not be diverted from its statutorily assigned purposes to pay other expenses of the clerk's office.

Yours very truly,

DAN MORALES
Attorney General of Texas

JORGE VEGA
First Assistant Attorney General

SARAH J. SHIRLEY
Chair, Opinion Committee

Prepared by Mary R. Crouter and Susan L. Garrison
Assistant Attorneys General